JOHN S. FISHER AND LORRAINE M. FISHER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fisher v. Commissioner
Docket No. 24832-90
United States Tax Court
T.C. Memo 1992-429; 1992 Tax Ct. Memo LEXIS 456; 64 T.C.M. (CCH) 299; July 29, 1992, Filed As Corrected September 16, 1992. *456 Decision will be entered under Rule 155. For John S. Fisher, pro se. For Respondent: Carmino J. Santaniello, Jr.
WRIGHT
WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: Respondent determined deficiencies in, and additions to, petitioners' Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
Sec. 6661
1986
$ 18,573
$ 929
[1]
$ 4,643
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Both parties have made concessions which will be taken into account in the Rule 155 computation. The issues remaining for decision are: (1) Whether proceeds received from petitioner's exercise of a nonstatutory stock option granted by his employer in 1976, and exercised by petitioner in 1986, are excludable from petitioners' gross income as amounts received under *457 an accident or health plan, or through accident or health insurance. We hold that the proceeds are not excludable. (2) Whether petitioners are liable for negligence additions under section 6653(a)(1)(A) and (B). We hold that they are. (3) Whether petitioners are liable for a substantial understatement of income tax under section 6661. We hold that they are. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners, John S. Fisher and Lorraine M. Fisher, resided in Wickford, Rhode Island, at the time their petition was filed in this case. The term petitioner in the singular will hereinafter refer to petitioner John S. Fisher. In 1960, petitioner graduated from Boston University with a bachelor's degree in accounting and finance. Upon graduation, petitioner accepted a position with Arthur Andersen & Co., a public accounting firm. In 1964, petitioner obtained his certified public accountant's license. During his employment with Arthur Andersen, petitioner worked in the firm's audit and tax department. In September 1969, petitioner commenced employment with *458 Digital Equipment Corp. (Digital) as the manager of operations control. From September 1969 through May 1982, petitioner was a full-time employee with Digital. On April 28, 1976 (the grant date), Digital granted petitioner an option to purchase shares of Digital common stock under Digital's Restricted Stock Purchase Plan of 1968 (the stock option plan). The stock option granted to petitioner constituted a nonstatutory stock option within the meaning of the regulations promulgated under section 83. Petitioner made no payment for the grant of the stock option. On April 28, 1976, the shares subject to the option were set aside by Digital in a individual reserve account under petitioner's name and employee number. Digital periodically furnished petitioner with statements disclosing the status of the reserve account. The stock option plan was: intended to provide a method whereby employees of the Company who are presently making and are expected to continue to make substantial contributions to the successful growth and development of the Company may be offered incentives, in addition to those of current compensation, future pensions and such stock options as they have been or *459 may be granted, thereby advancing the interests of the Corporation and its shareholders. The purpose of Digital's stock option plan was to encourage employees to remain in the employ of the company by personal involvement in the "fortunes of the Company". Digital intended to accomplish its objective by selling its common stock to key employees, coupled with a prohibition against the disposition of such stock and a requirement to resell the stock to Digital upon termination of employment. Under the stock option plan, the prohibition against disposition of the stock lapsed periodically as an employee's service with Digital continued. Pursuant to the stock option plan, petitioner was entitled to exercise the options at any time within 10 years and 90 days after the grant date. In the event the options were not exercised within the specified option period, the options would terminate. In furtherance of the stock option plan's purpose to retain key employees for continued service, the option shares were subject to two restrictions. The first restriction prevented petitioner from selling, transferring, pledging, or disposing of the option shares on which the restrictions had not *460 lapsed. The second restriction stated that if petitioner left Digital's employ for reasons other than death, retirement with Digital's consent, or his attainment of age 65, all nonlapse shares which petitioner had previously purchased had to be resold to Digital at the employee's purchase price. The stock option plan further provided that the restriction against disposition of and the obligation of resale to Digital would lapse at the rate of 10 percent of the shares granted under an option on each succeeding anniversary of the grant date. The provision for the lapse of the restrictions applied to shares of stock granted under an option whether or not the option was exercised in whole or in part on the date of the lapse. The stock option plan referred to shares on which the restrictions had lapsed as "free shares". Under Digital's policy, restrictions continued to lapse during an employee's leave of absence. This policy applied to each type of leave set forth in Digital's personnel policies and procedures manual including medical, hardship, military, educational, and personal leave. From May 1982 through February 1987, petitioner was on a leave of absence from Digital as a result *461 of a nonoccupational disability. In February 1987, petitioner returned to work at Digital and remained in its employ through the date of the trial. During petitioner's leave of absence, he remained classified as an employee by Digital and continued to qualify for several of the Digital employee benefits that he received prior to his leave of absence. During his leave of absence, petitioner received short-term and long-term disability benefits. Through the first 6 months of his leave, petitioner received his weekly base salary directly from Digital under its salary continuation plan. After 6 months, petitioner began to receive monthly payments from a third-party insurer under Digital's long-term disability plan (the disability plan). Petitioner paid for the disability plan coverage through weekly payroll withholdings. Petitioner received monthly payments under the disability plan until he returned to work in February 1987. All amounts received under the disability plan between November 1982 and February 1987 were properly excluded from petitioners' gross income under section 104(a)(3). Respondent does not contend that payments under the disability plan are includable in petitioners' *462 gross income. Between December 1977 and April 1983, petitioner exercised 1,710 of the 2,400 options granted by Digital pursuant to the stock option plan. On July 17, 1986, petitioner exercised his option for the remaining 690 shares by making a cash contribution to Digital in the amount of $ 7,406. On the exercise date, the shares had a fair market value of $ 58,132.55. This resulted in a distribution from Digital to petitioner in the amount of $ 50,726.55 ($ 58,132.55 less the cash contribution of $ 7,406). As of July 17, 1986, the restrictions on the 690 shares had lapsed under Digital's policy of permitting restrictions to lapse during an employee's leave of absence. Under the terms of the stock option plan, if petitioner's options were not exercised prior to July 27, 1986, the option to purchase the 690 shares would have expired. In connection with this distribution, Digital issued a Form W-2c to petitioner reporting the $ 50,726.55 on line 16 of the form as wages, tips, or other compensation for taxable year 1986. Digital claimed a deduction of $ 50,726.55 representing the compensation paid to petitioner as a result of the distribution. Digital's stock option plan included *463 a section entitled "Basic Federal Tax Consequences". This section stated that an option granted under the plan is a nonstatutory stock option to be taxed in accordance with section 83. In the "Basic Federal Tax Consequences" section, the following analysis was set forth: (4) If shares are acquired after the date on which the restrictions on the shares lapse, the option holder will realize taxable compensation income on the date of exercise in an amount equal to the difference between the purchase price and the fair market value of the shares on the date of exercise. (5) In general, the Corporation will be entitled to a tax deduction in the same amount as compensation income realized by the option holder. Petitioners did not report the $ 50,726.55 distribution as gross income on their 1986 Federal income tax return. Petitioners contend that the $ 50,726.55 distribution is excludable from gross income as an amount received under an accident or health plan pursuant to sections 104(a)(3) and 105(e)(1). Digital's stock option plan and disability plan were separate and distinct plans. Digital's stock option plan contained no indicia of an accident or health plan, and contained *464 no provision for accident or health insurance. On line 17a (other pensions and annuities) of their 1986 income tax return, petitioners listed the receipt of $ 50,729 and placed an asterisk next to the amount. On line 17b (taxable amount of line 17a) petitioners reported that no part of the $ 50,729 amount on line 17a was taxable. On line 22 petitioners included an asterisk and the notation "Statement attached". Petitioners placed another asterisk at the top of page 2 of their income tax return with the following notation: "Statement under 6661 -- L.T. disability income from 100 percent employee funded stock option excluded under section 104(a)(3)". OPINION The first issue for consideration is whether Digital's $ 50,726.55 distribution to petitioner represents compensation taxable under section 83, or whether the distribution is excludable from gross income under sections 104 or 105. Petitioners contend that the $ 50,726.55 distribution was received pursuant to Digital's disability plan rather than its stock option plan. They note that at the time petitioner commenced his leave of absence in May 1982, the restrictions on the 690 option shares granted by Digital in 1976 under *465 its stock option plan had not yet fully lapsed. Petitioners therefore assert that, but for the disability plan, petitioner would have been unable to exercise his options prior to the July 27, 1986, expiration date, and receive "free shares". Petitioners further argue that the difference between the fair market value of the stock distributed, $ 58,132.55, and petitioner's cash contribution of $ 7,406 does not constitute an amount "attributable to contributions by the employer which were not includible in gross income of the employee, or (B) are paid by the employer" within the meaning of sections 104(a)(3) and 105(a). Respondent argues that petitioner's exercise of the option to purchase 690 shares of Digital common stock is governed by section 83. Respondent therefore asserts that petitioners recognized gross income of $ 50,726.55, the excess of the fair market value of the property transferred to petitioner over the amount paid by petitioner for such property ($ 58,132.55 - $ 7,406 = $ 50,726.55). Respondent further argues that even if petitioner received the distribution pursuant to an accident or health plan, Digital's contribution totaled $ 50,726.55 and was not previously *466 included in petitioner's gross income. Therefore, respondent argues, the distribution would not be excludable from petitioners' gross income under sections 104(a)(3) or 105(a) even if this Court held that the sections were applicable. Section 105(e)(1) provides that for purposes of sections 104 and 105, "amounts received under an accident or health plan for employees" (emphasis added) will be treated as amounts received through accident or health insurance. Section 104(a)(3) states that gross income does not include: (3) amounts received through accident or health insurance for personal injuries or sickness (other than amounts received by an employee, to the extent such amounts (A) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (B) are paid by the employer); Petitioners contend that the stock option plan is a dual-purpose plan. Petitioners argue that the plan served a dual purpose as a restricted stock purchase plan and as an accident or health plan. We conclude that Digital's stock option plan contains no hint that it was ever intended to be an accident or health plan. The stock option plan in the *467 instant case was entitled "Restricted Stock Purchase Plan". The stock option plan made no mention and contained no indicia reflecting the plan's purpose to serve as an accident or health plan. In Caplin v. United States, 718 F.2d 544, 549 (2d Cir. 1983), the Court of Appeals recognized that a plan can serve in a dual capacity and in analyzing the plan involved therein stated: Ordinarily, a definite program to provide accident or health coverage will be accompanied by certain indicia reflecting the plan's purpose. Thus, for example, such a plan, if written, could state that its purpose is to qualify as an accident or health plan within the meaning of the Internal Revenue Code of 1954, as amended, and that the benefits payable under it are eligible for income tax exclusion. Ordinarily, it is specified that the benefits payable under an accident or health plan are those amounts incurred for medical care in the event of personal injury or sickness. It could also specify that the benefits payable be limited to those amounts incurred for medical care in the event of personal injury or sickness, and provide for the specific reimbursement of such expenses. Further, *468 a plan might allow an employee to be compensated for specific injuries or illnesses, such as the loss of use of an arm or leg. While these and other like provisions are not prerequisites to the existence of an accident or health plan, their absence plainly militates against a finding that a profit sharing plan serves a dual purpose. * * * In Gordon v. Commissioner, 88 T.C. 630, 640 (1987), this Court held that a lump-sum distribution from a profit-sharing plan was not excludable from the taxpayers' gross income under section 105 and stated "that without clear indicia to the contrary a deferred compensation profit-sharing plan is not ordinarily a dual purpose plan intended to provide both retirement and health or accident benefits". See also Berman v. Commissioner, 925 F.2d 936 (6th Cir. 1991), affg. T.C. Memo. 1989-654. The stock option plan in the instant case, like the plans in Caplin and Gordon, contained none of the aforementioned indicia reflecting that the plan was intended to serve a dual purpose as an accident or health plan. In fact, the evidence strongly suggests otherwise. The stock option plan was compensatory *469 in nature and provided Digital's employees with the opportunity to share in the "fortunes of the Company". The stock option plan clearly stated that it was governed by section 83, and did not mention the applicability of sections 104(a)(3) or 105(e)(1). Digital issued a Form W-2c reporting the $ 50,726.55 distribution as compensation and claimed a deduction in the same amount representing compensation paid to petitioner. Between November 1982 and February 1987, petitioner received long-term disability benefits under Digital's disability plan which both parties agree were excludable from gross income under section 104(a)(3). Petitioner also asserts that the $ 50,726.55 distribution he received pursuant to the stock option plan was not compensatory in nature, but was instead a payment under Digital's disability plan. Petitioners point out that Digital had a policy under which restrictions on Digital's common stock continued to lapse during an employee's leave of absence, including petitioner's leave of absence due to disability. Petitioners therefore argue that because the stock option plan restrictions continued to lapse during petitioner's disability leave, the stock option *470 plan, with respect to petitioner, was converted to an accident or health plan. We reject petitioners' argument that Digital's policy permitting restrictions to lapse under its stock option plan during a leave of absence, including medical, hardship, military, educational, or personal, is sufficient to convert the $ 50,726.55 distribution at issue into an amount received under an accident or health plan, or through accident or health insurance. The purpose of the stock option plan was to provide additional compensation to key employees who remained in Digital's employ. Digital attempted to accomplish this objective by providing a means by which the optionees could benefit from appreciation in Digital's common stock over a 10-year period. The stock options were granted to petitioner in 1976, a time when he was neither sick nor disabled. Petitioner worked with Digital from 1976 to 1982, entered disability leave in 1982, and returned to work in 1987. The stock option plan contained no provision for health or accident insurance or any indicia reflecting the plan's purpose to serve as an accident or health plan. We therefore hold that the distribution was governed by section 83. *471 Accordingly, for taxable year 1986 petitioners received gross income in the amount of $ 50,726.55, the difference between the fair market value of the common stock received by petitioners ($ 58,132.55) and the amount they paid for the stock ($ 7,406). [1]
*472 The next issue for consideration is whether petitioners are liable for negligence additions to tax under section 6653(a)(1)(A) and (B). Section 6653(a)(1)(A) provides that if any part of any underpayment of tax is due to negligence or intentional disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Section 6653(a)(1)(B) states that if any part of any underpayment of tax is due to negligence or intentional disregard of rules or regulations, there shall be added to the tax an amount equal to 50 percent of the interest payable under section 6601 on the underpayment. Negligence under section 6653(a) is lack of due care, or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent's determination that petitioners' underpayments of tax were due to negligence or intentional disregard of the rules or regulations is "presumptively correct and must stand unless the taxpayer can establish that he was not negligent." Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. T.C. Memo. 1982-337. *473 Petitioners therefore bear the burden of proving that they are not liable for the additions to tax. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972); Enoch v. Commissioner, 57 T.C. 781, 802-803 (1972). We hold that petitioners lacked due care and failed to do what a reasonable and ordinarily prudent person would do under the circumstances. As a certified public accountant, petitioner worked in the audit and tax department of Arthur Andersen, which at that time was a big eight public accounting firm. Accordingly, the question of whether petitioner exercised due care must be considered in light of his significant tax background. Carlins v. Commissioner, T.C. Memo. 1988-79. In the instant case, the most glaring indication of petitioners' unreasonableness is disclosed by the position taken on their income tax return that the stock option plan distribution was attributable to long-term disability income from a "100 percent employee funded stock option excluded under section 104(a)(3)". Petitioners only contributed $ 7,406 to the stock option plan and totally disregarded Digital's contribution of $ 50,726.55 *474 to the plan. Thus, even if we held that section 104(a)(3) applied to the instant facts, which we do not, petitioners' receipt of the distribution would not have been excludable under section 104(a)(3) because it was attributable to contributions by Digital which were not previously includable in petitioners' gross income. Indeed, Digital's issuance of a Form W-2c should have alerted petitioners to the fact that the position taken on their 1986 income tax return was inconsistent with the proper tax treatment of the distribution. On brief, petitioners present no objective facts indicating, nor do they make any persuasive argument concluding, that they are not negligent and thus not liable for the additions to tax under section 6653(a). Accordingly, we hold that petitioners are liable for the additions to tax under section 6653(a)(1)(A) and (B). The final issue we must address is whether petitioners are liable for a substantial understatement of tax liability under section 6661. The amount of a section 6661 addition to tax assessed after October 21, 1986, is 25 percent of the amount of any underpayment attributable to such substantial understatement. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498, 500-503 (1988). *475 An understatement is substantial if the understatement exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return. Sec. 6661(b)(1)(A). However, the amount of the understatement may be reduced where the position taken on the return was supported by substantial authority or the taxpayer adequately disclosed the relevant facts affecting the item on the return. Sec. 6661(b)(2)(B). In the instant case, petitioners failed to present substantial authority for the position taken on their 1986 income tax return. Furthermore, the disclosure on petitioners' 1986 income tax return was inadequate as it was inaccurate and misleading. Petitioners claimed that the stock option plan was 100-percent employee funded. This was an inaccurate and misleading statement since the stock option plan included contributions provided by Digital. We therefore conclude that the information set forth by petitioners on their 1986 income tax return did not constitute adequate disclosure as the statement could not reasonably be expected to apprise respondent of the nature of the potential controversy concerning the item. See sec. 1.6661-4(b)(3), Income Tax Regs. Further, *476 the understatement is substantial pursuant to section 6661(b)(1)(A) since it exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown. Accordingly, we sustain the addition to tax determined by respondent under section 6661(a). Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on $ 18,573.↩
1. Even if we were to conclude that secs. 104 and/or 105 were applicable, which we do not, we would reject petitioners' application of the parenthetical language of sec. 104(a)(3). Sec. 104(a)(3) excludes from gross income amounts received through accident or health insurance for personal injuries or sickness except for amounts "attributable to contributions by the employer which were not includible in the gross income of the employee". Petitioners contend that Digital's contribution was less than the $ 50,726.55 amount representing the difference between the fair market value of the stock received and petitioners' $ 7,406 contribution to the plan on the exercise date. We find no support for such a position. Petitioner paid nothing for the grant of the stock options in 1976 and did not contribute to the purchase of the 690 shares until his exercise of the option on July 17, 1986. Therefore, the $ 50,726.55 amount was attributable to contributions by Digital which were not previously included in the gross income of petitioners.↩