DONNA BURNSIDE AND ESTATE OF VERNILE L. BURNSIDE, DECEASED, DONNA BURNSIDE, PERSONAL REPRESENTATIVE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Burnside v. Commissioner
Docket No. 10828-92
United States Tax Court
T.C. Memo 1994-138; 1994 Tax Ct. Memo LEXIS 124; 67 T.C.M. (CCH) 2557; March 30, 1994, Filed *124 Decision will be entered for respondent. For petitioners: M. Gary Atkinson. For respondent: Victor A. Ramirez. DAWSON
DAWSON
MEMORANDUM OPINION DAWSON, Judge: Respondent determined a deficiency of $ 11,454 in petitioners' 1988 Federal income tax and additions to tax pursuant to sections 6653(a)(1)[1] and 6661(a) in the respective amounts of $ 168 and $ 2,864. The issues for decision are: (1) Whether petitioners may exclude, under section 105, distributions that Vernile L. Burnside received from the Union Pacific Railroad Co. (Union Pacific) during 1988; (2) whether petitioners are liable for the addition to tax pursuant to section 6653(a)(1); and (3) whether petitioners are liable for the addition to tax pursuant to section 6661(a). This case was submitted fully stipulated under Rule 122. The stipulation of facts and *125 attached exhibits are incorporated herein by this reference. Vernile L. and Donna Burnside were husband and wife during 1988. Vernile L. Burnside (Mr. Burnside) died on July 14, 1989. Petitioner Donna Burnside (Mrs. Burnside) resided in Pocatello, Idaho, at the time the petition in this case was filed. Distributions to Mr. Burnside
Mr. and Mrs. Burnside timely filed a joint Federal income tax return for 1988. Mr. Burnside was employed by Union Pacific until March 1987, when he retired on a medical disability. [2]
On Line 17a of their 1988 Federal income tax return, Mr. and Mrs. Burnside listed "Total pensions and annuities" of $ 77,563. They reported $ 15,913 of this amount as taxable income. The $ 15,913 represented a distribution that Mr. Burnside received from the U.S. Railroad Retirement Board (Retirement Board). [3]
*126 In addition to the Retirement Board distribution, the $ 77,563 included $ 11,956 in reported W- 2 income that Mr. Burnside received from Union Pacific, as well as the following distributions, which originated from different Union Pacific plans in that year: Type of Plan
Amount
Employee Stock Plan
$ 9,986
Pay Stock Ownership Plan
1,056
Thrift Plan
38,652
The above distributions were made to Mr. Burnside at or following his retirement from Union Pacific. Petitioners did not offer into evidence any direct or specific information regarding the Employee Stock Plan, the Pay Stock Ownership Plan, or the Thrift Plan. The only evidence in the record regarding Mr. Burnside's retirement plans is the "Railroad Retirement and Survivor Benefits" information booklet (the pamphlet or the Railroad Retirement pamphlet). The pamphlet states that the primary mission of the Railroad Retirement Board is to "administer the Railroad Retirement Act". [4] The pamphlet further states that "Medicare, unemployment and sickness insurance payments, and other benefits paid by the Railroad Retirement Board are described in separate pamphlets." Petitioners did not produce any of these "separate pamphlets". *127 Retirement plan disability payments discussed in the pamphlet are made only if the employee has at least 10 years in service and is totally disabled, or, alternatively, is permanently disabled from performing railroad work. Disability payments are made only if the recipient is disabled and unable to work or is not working. An annuitant's disability annuity may be decreased under this plan if the annuitant (1) also receives worker's compensation or a public disability benefit, or (2) earns more than $ 400 in any employment or self-employment in any month where the annuitant is otherwise eligible for disability annuity payments. The Railroad Retirement pamphlet states that after an annuitant's income under the plan *128 exceeds base amounts of $ 25,000 for a single annuitant or $ 32,000 for a married annuitant, the balance is subject to Federal income taxation. It also states that an annuitant's disability income under the plan is taxed as a private or public service pension. Except for the foregoing statements, the pamphlet contains no reference to accident or health benefits. Neither does it discuss whether payments received under the plan are or might be excluded from income pursuant to section 105. Mr. and Mrs. Burnside reported a total taxable income of $ 5,548 on their 1988 Federal income tax return. In the notice of deficiency, respondent redetermined their income to be $ 57,679. Issue 1. Distributions to Mr. Burnside
The first issue for decision is whether petitioners may exclude, sunder section 105, distributions that Mr. Burnside received from Union Pacific in 1988. Petitioners contend that all of the distributions, other than the $ 15,913, are excludable from income under section 105. [5] Respondent argues to the contrary. *129 Gross income includes all income from whatever source derived, unless specifically excluded from income under the exclusion provisions of the Internal Revenue Code. Secs. 61, 101-136. Section 105 permits exclusion from gross income of certain amounts received through accident or health insurance, and section 105(e) equates generally amounts received through an uninsured accident or health plan with amounts received through accident or health insurance. Sec. 1.105-5(a), Income Tax Regs.The regulation provides that "In general, an accident or health plan is an arrangement for the payment of amounts to employees in the event of personal injuries or sickness." Under the regulation, the plan may cover one or more employees, there may be different plans for different employees or classes of employees, the plan may be insured or noninsured, and the plan need not be in writing nor the benefits enforceable, so long as the covered employee is aware of the existence of the plan. This Court has previously considered whether certain accident or health-related distributions were paid pursuant to an accident or health plan as contemplated by section 105. See, e.g., Gordon v. Commissioner, 88 T.C. 630 (1987); *130 Laverty v. Commissioner, 61 T.C. 160 (1973), affd. per curiam 523 F.2d 479 (9th Cir. 1975); American Foundry v. Commissioner, 59 T.C. 231 (1972), affd. on this issue 536 F.2d 289 (9th Cir. 1976); Lang v. Commissioner, 41 T.C. 352 (1963); Estate of Kaufman v. Commissioner, 35 T.C. 663 (1961), affd. 300 F.2d 128 (6th Cir. 1962); Beisler v. Commissioner, T.C. Memo. 1985-25, affd. 814 F.2d 1304 (9th Cir. 1987). We think the Railroad Retirement pamphlet does not describe a plan that is of the type of accident and health plan Congress had in mind when it enacted section 105. The pamphlet makes no mention and contains no indicia reflecting a purpose to serve as an accident or health plan. In Caplin v. United States, 718 F.2d 544, 549 (2d Cir. 1983), the Court of Appeals recognized that a plan can serve in a dual capacity and in analyzing the plan involved therein stated: Ordinarily, a definite *131 program to provide accident or health coverage will be accompanied by certain indicia reflecting the plan's purpose. Thus, for example, such a plan, if written, could state that its purpose is to qualify as an accident or health plan within the meaning of the Internal Revenue Code of 1954, as amended, and that the benefits payable under it are eligible for income tax exclusion. Ordinarily, it is specified that the benefits payable under an accident or health plan are those amounts incurred for medical care in the event of personal injury or sickness. It could also specify that the benefits payable be limited to those amounts incurred for medical care in the event of personal injury or sickness, and provide for the specific reimbursement of such expenses. Further, a plan might allow an employee to be compensated for specific injuries or illnesses, such as the loss of use of an arm or leg. While these and other like provisions are not prerequisites to the existence of an accident or health plan, their absence plainly militates against a finding that a profit sharing plan serves a dual purpose. * * *
See also Berman v. Commissioner, 925 F.2d 936 (6th Cir. 1991), *132 affg. T.C. Memo. 1989-654 (addressing deferred compensation plans). Here, as in Caplin and Berman, the plan described in the pamphlet fails to satisfy the indicia articulated in Caplin. There are no health or accident provisions in the pamphlet. There must be a "definite program to provide such accident or health coverage accompanied by some indicia reflecting the plan's purpose." See Gordon v. Commissioner, supra at 639. No such "definite program" exists here. The pamphlet does not state that the plan it describes is intended to be an accident or health plan under section 105 or for any other purpose or that payments made under the plan are excludable from income under that section. It contains no provision for or limitation on the reimbursement of actual or anticipated medical expenses. It does not provide for payment of any accident or health benefits, such as those payable for loss of limb, other than those for total disability, which are paid only if an employee has at least 10 years of service. Specific illnesses and injuries are not distinguished, nor are there variations in payments depending *133 on the nature and severity of the illness or injury. Petitioners' argument that the pamphlet "had a disability provision that amounted to an accident or health insurance plan" is simply not supported by the evidence in this record. Petitioners rely on Wood v. United States, 590 F.2d 321 (9th Cir. 1979), where the Court of Appeals affirmed the District Court's holding that a lump-sum profit-sharing distribution which the taxpayer received upon termination of his employment due to disability was excludable from income under section 105(c) and (e) because the plan under which the money was received served a dual purpose. However, the Court of Appeals stated that "the status of the plan as an accident or health plan under section 105 is not in dispute". Id. at 323. Here, on the other hand, the status of the plan is at issue. We conclude that, without clear indicia to the contrary, the plan described in the Railroad Retirement pamphlet is not a health or accident plan, as those terms are defined in section 105(e), nor a dual purpose plan intended to provide both retirement and health or accident benefits. It is a deferred *134 compensation plan. Petitioners have established no nexus linking the distributions to health or accident recovery. [6] Thus, we hold that the Union Pacific distributions made to Mr. Burnside were not excludable from gross income as health or accident benefits under section 105. For completeness, we further hold that petitioners failed *135 to prove that the distributions in issue met the requirements of section 105(c)(1) and (2) that the payment be made for the permanent loss of use of a bodily member or permanent disfigurement or was computed with reference to the nature of the injury. Benefits qualify for excludability under section 105(c) only if they vary according to the type of injury a taxpayer receives. Hines v. Commissioner, 72 T.C. 715, 720 (1979); see Beisler v. Commissioner, supra.Petitioners have not proved that the payments made to Mr. Burnside were computed with regard to his injury or disability. Consequently, section 105(c)(1) and (2) provides another reason why the distributions may not be excluded from gross income under section 105(c). Issues 2 & 3. Sections 6653(a)(1) and 6661(a) Additions to Tax
The second and third issues are whether petitioners are liable for the additions to tax under section 6653(a)(1) and 6661(a). Section 6653(a)(1) imposes an addition to tax if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. Negligence is the lack of due care or failure *136 to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent's determination of negligence is presumed to be correct and petitioners have the burden of proving that it is erroneous. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982). Section 6661(a) provides for an addition to tax if there is a substantial understatement of income tax. The amount of the section 6661 addition to tax for additions assessed after October 21, 1986, is equal to 25 percent of the amount of any underpayment attributable to the substantial understatement. Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002, 100 Stat. 1951; Pallottini v. Commissioner, 90 T.C. 498, 501-502 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). The understatement is reduced if it is based on substantial authority or is adequately disclosed either on the return or in a statement attached to the return. Sec. 6661(b)(2)(B). *137 Petitioners have the burden of proof. Rule 142(a). Based on the record before us, we hold that petitioners did not exercise the level of reasonable and ordinary prudence required to escape the section 6653(a)(1) addition to tax. See Neely v. Commissioner, supra. Accordingly, they are liable for that addition to tax. Further, because petitioners have substantially understated their income, we hold that they are liable for the section 6661(a) addition to tax. Therefore, we sustain respondent's determination with respect to the additions to tax under sections 6653(a)(1) and 6661(a). To reflect the foregoing,
Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. There is no evidence in the record as to the nature of Mr. Burnside's disability.↩
3. The Railroad Retirement Board is an independent agency of the United States charged with the administration of the Railroad Retirement Act of 1937 and the Railroad Unemployment Insurance Act.↩
4. The pamphlet further states that "The Railroad Retirement Act is a Federal law that provides retirement and disability annuities for qualified railroad employees, spouse annuities for their wives or husbands, and survivor benefits for the families of deceased employees who were insured under the Act."↩
5. Section 105, in relevant part, provides: SEC. 105. AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS. (a) AMOUNTS ATTRIBUTABLE TO EMPLOYER CONTRIBUTIONS. -- Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer. (b) AMOUNTS EXPENDED FOR MEDICAL CARE. -- Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include amounts referred to in subsection (a) if such amounts are paid, directly or indirectly, to the taxpayer to reimburse the taxpayer for expenses incurred by him for the medical care (as defined in section 213(d)) of the taxpayer, his spouse, and his dependents (as defined in section 152). Any child to whom section 152(e) applies shall be treated as a dependent of both parents for purposes of this subsection. (c) PAYMENTS UNRELATED TO ABSENCE FROM WORK. -- Gross income does not include amounts referred to in subsection (a) to the extent such amounts- (1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer, his spouse, or a dependent (as defined in section 152), and (2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work. * * * (e) ACCIDENT AND HEALTH PLANS. -- For purposes of this section and section 104- (1) amounts received under an accident or health plan for employees, and (2) amounts received from a sickness and disability fund for employees maintained under the law of a State, or the District of Columbia, shall be treated as amounts received through accident or health insurance.↩
6. More fundamentally, petitioners have not clearly established that the Union Pacific distributions were from disability plans described in the Railroad Retirement pamphlet. However, both parties appear to have proceeded from this assumption on brief. Assuming arguendo that Mr. Burnside's distributions at issue were from plans not described in the pamphlet, respondent must still prevail in this matter because as stated, the pamphlet is the only evidence that petitioners produced regarding Mr. Burnside's retirement plans. Thus, they have provided this Court with no other basis (that is, besides the pamphlet) for holding that the distributions from Union Pacific qualify under sec. 105↩.