Kenneth S. ROSEN; Lou Hill Davidson, (Johnnye), Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 86–2657.

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1987.

Decided Sept. 21, 1987.

Martha B. Brissette, Tax Div., Dept. of Justice, Washington, D.C. (John Perry Alderman, U.S. Atty., Roanoke, Va., Roger M. Olsen, Asst. Atty. Gen., Michael L. Paup, Ann Belanger Durney, Washington, D.C., on brief), for defendant-appellant.

D. French Slaughter, III (Robert E. Stroud, McGuire, Woods, Battle & Boothe, Charlottesville, Va., on brief), for plaintiffs-appellees.

Before WIDENER and WILKINS, Circuit Judges, and SMALKIN, United States District Judge for the District of Maryland, sitting by designation.

WILKINS, Circuit Judge:

Taxpayers Kenneth S. Rosen and his wife, Lou Hill Davidson,[1] brought an action seeking a refund of income taxes paid for the years 1976, 1977 and 1978. The government appeals from entry of judgment for taxpayers on cross-motions for summary judgment, 646 F.Supp. 97. We reverse.

## I.

Rosen was a member of the Office of the President and the Board of Directors at Warner Communications, Inc. (WCI). The terms of his employment were set forth in an employment agreement effective January 1, 1977 to December 31, 1981. Section 5 of that agreement entitled Rosen to receive compensation in the event of disability:

> 5. *Disability.* If during the term of full time employment the Executive [Rosen] shall become physically or mentally disabled, *whether totally or partially,* so that he is prevented from performing his usual duties for a period of six consecutive months ... WCI shall, nevertheless, continue to pay the Executive his full compensation ... through the last day of the sixth consecutive month of disability.... WCI may at any time on or after such day ... reduce the Executive's Current Compensation for the balance of the term of full time employment to an amount equal to 75% of what his Current Compensation would have been had the disability not occurred.... (Emphasis added.)

On April 3, 1977 Rosen sustained severe head injuries in a horse-riding accident and was left permanently and totally disabled. He was subsequently paid under the terms of section 5 of the employment agreement and received the full amount of his "Current Compensation" until October, 1977. Effective October 1, 1977, WCI reduced

Rosen's monthly compensation to 75% of his former salary. In December, 1977 Rosen formally resigned his position with WCI but was still regarded as an employee for purposes of the corporation's pension plan. Subsequently, in accordance with the employment agreement, WCI reduced Rosen's compensation to reflect monthly payments he received pursuant to a personal disability insurance policy and social security. In 1981 Rosen's five-year term of employment expired and he was removed from WCI's payroll. Rosen paid income tax on the contract benefits received in 1977 and 1978, but filed refund claims with the Internal Revenue Service for 1976, 1977 and 1978.[2] He alleged the payments pursuant to section 5 of the employment agreement were exempt from tax under 26 U.S.C.A. § 105(c) (West Supp.1987)[3]:

> (c) *Payments unrelated to absence from work.*—Gross income does not include amounts referred to in subsection (a) [amounts attributable to employer contributions to an accident or health insurance plan] to the extent such amounts—
>
> (1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer, his spouse, or a dependent (as defined in section 152), and
>
> (2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work.

His claims for refund were denied and he brought suit in district court.

■ Under the terms of 26 U.S.C.A. § 105(a) (West Supp.1987) payments which an employee receives through an accident or health insurance plan are generally included in the employee's gross income if those amounts are attributable to contributions by the employer which were not in-

---

1. Lou Hill Davidson is a party to this appeal because she filed joint returns with her husband for the tax years in dispute.

2. The section 105(c) exclusion claimed for 1977 generated a net operating loss carryback for

1976. That carryback was the basis for the refund claimed for 1976.

3. All section references are to the Internal Revenue Code of 1954, as amended, and in effect for the years at issue.

cludible in the gross income of the employee, or were paid by the employer. However, payments are excludible from gross income if they satisfy the requirements of 26 U.S.C.A. § 105(c). To exclude payments, a taxpayer must prove that (1) the amounts received were paid through an accident or health insurance plan, (2) the amounts constituted payment for the permanent loss or loss of use of a member or function of the body, or for permanent disfigurement, and (3) the amounts were computed with reference to the nature of injury without regard to the period the employee was absent from work.

The district court concluded that Rosen's employment contract satisfied the requirements of section 105(c). However, its analysis was not wholly consistent with the prerequisites of the statute. First, the district court reasoned that one must look to *the actual disability suffered, rather than to the underlying contract providing such payments,* to determine whether the amounts received constituted payment for the permanent loss that is required by the statute. Second, because Rosen was totally and permanently disabled, a fact that is undisputed, the district court held that payments under the language of any disability provision would have been "for" a permanent disability, and Rosen's payments were therefore computed with reference to the nature of his injury. Finally, the district court held that because Rosen could not possibly return to work, the benefits were computed without regard to the period he was absent from work.

The uncontroverted fact of actual permanent injury was the cornerstone of the district court's reasoning. However, this analysis generally ignored the significance of the governing agreement in determining whether payments were excludible under section 105(c). We find this was error.

## II.

A review of the cases indicates that for payments to be excludible from income under section 105(c), the instrument or agreement under which the amounts are paid must itself provide specificity as to the permanent loss or injury suffered and the corresponding amount of payments to be provided. The first criterion for exclusion under section 105(c), that payments were made under a health or insurance plan, although undisputed here, may be met even though the "plan" acts as both profit-sharing agreement and health insurance plan. However, the specific requirements of the statute "are not met by the simple expedient of changing the labels attached to the payments at the time the payments are made." *Caplin v. United States,* 718 F.2d 544, 548 (2d Cir.1983) (language of agreement was too "loose" to satisfy taxpayer's burden to establish existence of accident or health plan within company's profit-sharing plan; payments were not excludible from income under section 105(c)). The actual permanency of injury is not alone determinative of whether amounts paid qualify for exclusion under section 105(c); rather, exclusion is permitted only under plans which vary benefits to reflect the particular loss of bodily function. *Gibson v. United States,* 643 F.Supp. 181, 183–84 (W.D.Tenn. 1986); *Christensen v. United States,* 57 A.F.T.R.2d (P–H) ¶ 86–533 at pp. 86–997 to 86–998 (D.Minn.1986) [Available on WESTLAW, DCT database]; *Hines v. Commissioner,* 72 T.C. 715, 719–20 (1979).

In the recent case of *Beisler v. Commissioner,* 814 F.2d 1304 (9th Cir.1987) (en banc), the Ninth Circuit held that amounts received as accident or health insurance benefits may be excluded from gross income under section 105(c) "only if paid by a plan that varies the amount of payment according to the type and severity of the injury suffered by the employee." *Id.* at 1308. Rosen's reliance upon an earlier decision from the Ninth Circuit, *Wood v. United States,* 590 F.2d 321 (9th Cir.1979), is therefore misplaced. *Beisler* expressly rejected the view that *Wood* controlled the result reached. The court noted that *Wood* "assumed, without explanation" that the specificity requirements of section 105(c)(2) were met, *and* that such unexplained assumptions on non-litigated issues were of no precedential value. *Beisler,* 814 F.2d at 1308.

The legislative history of section 105(c)(2) is supportive of our interpretation. The report of the Senate Finance Committee recognized the distinct character of both the nature-of-the-injury and the absence-from-work requirements of the statute:

Subsection (c) provides that the amounts described in subsection (a) shall not be included in gross income if they constitute payment for permanent loss, or loss of use, of a member or function of the body, or the permanent disfigurement, of the taxpayer, his spouse, or a dependent, and the payments are computed with reference to the nature of the injury and without regard to the period the employee is absent from work. The following example will illustrate the kind of payments excludible from gross income under this subsection. Assume that under the plan of an employer payments equal to 25 percent of annual compensation are made to employees for loss of a leg. The $10,000 employee would therefore receive a payment of $2,500 and the $4,000 employee would receive a payment of $1,000. These amounts would be excludible from gross income if, under the plan, they are payable regardless of the period that the employee is absent from work.

S.Rep. No. 1622, 83d Cong., 2d Sess. 183–84, *reprinted in* 1954 U.S.Code Cong. & Ad.News 4621, 4818; *accord* H.R.Conf. Rep. No. 2543, 83d Cong., 2d Sess. 25, *reprinted in* 1954 U.S.Code Cong. & Ad. News 5280, 5284.

### III.

■ The district court erroneously placed emphasis on the actual disability suffered rather than the underlying plan or agreement under which payments were made. Section 105(c) creates an exception to the general rule that amounts received from employer-funded health and accident plans are includible in the employee's gross income. Payments that constitute wages are distinguished from those that do not resemble income by compliance with the requirements of section 105(c)(2) that amounts paid are computed (1) with reference to the nature of the injury and (2) without regard to the period the employee

is absent from work. The analysis of the lower court would effectively render this language of specificity in the statute surplusage. Such a reading is unsupported by case law and legislative history.

Indeed, the language of the agreement in this case does not approximate the specifics of the "line-of-duty disability benefit" plan found insufficient in *Beisler*. Rosen's employment agreement simply allowed for payment of benefits for physical or mental disability, "whether total or partial," provided the six-month requirement was met. The agreement set forth no requirement as to permanency of injury, nor did it specifically allocate the amount paid according to the nature of the injury, loss, or disfigurement suffered. Further, as conceded by counsel at oral argument, had Rosen been out of work for six months and then returned to full duties, he still would have been paid under the terms of his agreement for the period of his absence. The agreement plainly did not compute the amount of payments "with reference to the nature of the injury," nor did it award benefits "without regard to the period the employee [was] absent from work."

We therefore conclude that the district court erred in granting summary judgment for taxpayer Rosen. As a matter of law, the payments made to Rosen pursuant to the disability provision of his employment contract were not excludible from income under section 105(c). The district court is instructed to enter judgment for the United States.

**REVERSED AND REMANDED.**