**Michael J. BERMAN,
Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Respondent–Appellee.**

No. 90–1356.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 15, 1990.

Decided Feb. 13, 1991.

Phillip L. Sternberg (argued), Jerry M. Ellis, Stephen M. Feldman, Michael P. Witzke, Couzens, Lansky, Fealk, Ellis, Roeder & Lazar, Farmington Hills, Mich., for petitioner-appellant.

Peter K. Scott, Internal Revenue Service, Janet A. Bradley (argued), Gary R. Allen, Acting Chief, Richard Farber, Robert W. Metzler, U.S. Dept. of Justice, Appellate Section Tax Div., Washington, D.C., for respondent-appellee.

Before KRUPANSKY, GUY and SUHRHEINRICH, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Petitioner/taxpayer Michael J. Berman appeals from a tax court decision holding that payments he received from his employers' defined benefit plan and pension plan were not excludable from his gross income under 26 U.S.C. § 105(c) (1954).[1] For the reasons stated below, we AFFIRM.

---

**1.** Because the tax year at issue in this case is 1983, the Internal Revenue Code of 1954 controls the issues in this case. All cites are, therefore, in reference thereto.

### I.

Taxpayer practiced osteopathic medicine from 1972 until August, 1979, for Grand Medical Clinic, P.C. ("Grand") and Glendale Medical Laboratories, Inc. ("Glendale"), two personal service corporations which he wholly owned.[2] Glendale provided retirement benefits for its employees through two separate deferred compensation plans: a defined benefit plan and a pension plan. Grand was also a sponsor of the pension plan.

Under the defined benefit plan, an employee was entitled to receive a specified benefit at retirement based upon the amount of the employee's compensation and his years of service. The employer's contributions to the plan were determined through actuarial projections of the amounts that would be needed to provide the benefits promised. The defined benefit plan also provided for benefits in the event of a disability as follows:

5.3 DISABILITY RETIREMENT BENEFITS

(a) If a Participant becomes Totally and Permanently Disabled (see Section 1.26) prior to retirement or separation from service, and such condition continues for a period of six (6) consecutive months and by reason thereof such Participant's status of an Employee ceases, then said disabled Participant shall be entitled to receive his Present Value of Accrued Benefit. The benefits payable hereunder shall be paid pursuant to the provisions of Section 5.6.

The defined benefit plan defined total and permanent disability as:

[A] physical or mental condition of a Participant resulting from bodily injury, disease, or mental disorder which renders him incapable of continuing any gainful operation and which condition constitutes a total disability under the federal Social Security Act.

Under the pension plan, the employers made yearly contributions to separate accounts equal to 25 percent of each eligible employee's salary. Upon retirement, the amount in an employee's account became distributable to the employee in a lump sum or in installments. If the employee died or became totally and permanently disabled, the amount credited to the employee's account became vested and distributable to the employee or his beneficiaries. The provisions governing disability benefits stated as follows:

6.3 DETERMINATION OF BENEFITS IN EVENT OF DISABILITY

In the event of a Participant's Total and Permanent Disability prior to retirement or separation from service, all amounts credited to such Participant's Account as of the subsequent Anniversary Date shall become vested. As of the Anniversary Date coinciding with or next following the event of Total and Permanent Disability, the Trustee in accordance with the provisions of Sections 6.5 and 6.6, shall distribute to such Participant all amounts credited to the account of such Participant's Account.

The pension plan defined total and permanent disability as follows:

[A] physical or mental condition of a Participant resulting from bodily injury, disease, or mental disorder which renders him incapable of continuing his usual and customary employment with the Employer. The disability of a Participant shall be determined by a licensed physician chosen by the Administrator. The determination shall be applied uniformly to all Participants.

On April 19, 1983, taxpayer's father, in his capacity as administrator and trustee of the plans, determined that taxpayer was permanently disabled and distributed $793,055.12 to him, representing $568,398.94 from the pension plan and $224,656.18 from the defined benefit plan. On his federal income tax return for 1983, taxpayer excluded the distributions from his gross income, as payments made from an accident or health plan, under section 105(c) of the Internal Revenue Code, 26 U.S.C. § 105(c).

---

**2.** This case was submitted on fully stipulated facts under Rule 122 of the Rules of Practice and Procedure of the United States Tax Court.

Following an audit, the Commissioner included the entire amount of the distributions in taxpayer's income on the belief that the distributions were deferred compensation.

The tax court held for the Commissioner, ruling that: (1) the plans did not qualify as "dual purpose plans," providing for both deferred compensation and accident or health benefits; and (2) even assuming that the plans were intended to provide accident or health benefits, they did not vary the amount of benefits payable according to the nature of the illness or injury suffered, as required under section 105(c)(2). Taxpayer appeals both tax court rulings.

## II.

Generally, amounts which an employee receives through an accident and health plan are included in an employee's gross income. 26 U.S.C. § 105(a) and (e). There are two exceptions to this general rule. Under section 105(b), amounts paid to reimburse actual out-of-pocket expenses incurred for medical care are excludable from gross income. Under section 105(c), which is the provision at issue here, amounts paid for the permanent loss of a member or function of the body, or for permanent disfigurement, are excludable from gross income.[3] Section 105(c) provides:

> Gross income does not include amounts referred to in subsection (a) to the extent such amounts
>
> (1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer, his spouse, or a dependent ... and
>
> (2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work.

26 U.S.C. § 105(c)(1)–(2). The underlying purpose of section 105(c) is to offer relief in the form of a tax benefit to a taxpayer who receives money from an accident or health plan on account of "a severe physical injury which permanently and significantly lessens the quality of life which he had enjoyed prior to injury." *Hines v. Commissioner*, 72 T.C. 715, 718–19 (1979).

The same two issues which the tax court resolved in favor of the Commissioner must be resolved by this court. *See First Charter Financial Corp. v. United States*, 669 F.2d 1342, 1345 (9th Cir.1982) (the question of what constitutes "income" for federal tax purposes is a question of law); *Hubbard v. Commissioner*, 872 F.2d 183, 186 (6th Cir.1989); *Policy v. Powell Pressed Steel Co.*, 770 F.2d 609, 612 (6th Cir.1985), *cert. denied*, 475 U.S. 1017, 106 S.Ct. 1202, 89 L.Ed.2d 315 (1986) (questions of law are reviewed by the court of appeals *de novo*). First, we must determine whether the defined benefit and pension plans from which taxpayer received distributions qualified as "dual purpose plans," thereby bringing them within the scope of the accident or health plan provisions of section 105. Second, if we conclude that there is a health plan component to these deferred compensation plans, we must then determine whether the payments taxpayer received on account of his disability satisfy the requirements of section 105(c)(1) and (2) for exclusion from taxpayer's gross income.

### A. Dual Purpose Plans.

■ Generally, deferred compensation plans and accident or health plans serve distinct purposes. Deferred compensation plans attempt to remunerate an employee, albeit at the end of the employment relationship as opposed to weekly, bi-weekly or monthly, for services rendered over a substantial period of time. Accident or health plans attempt to protect an employee from the expense and hardship of illness or inju-

---

**3.** In this case, the parties have stipulated that taxpayer suffered from post-traumatic stress disorder and that this mental condition justified payments for a "total and permanent disability" under the terms of the defined benefit plan and pension plan. Further, the Tax Commissioner has not challenged taxpayer's contention that his mental condition constituted a "permanent loss ... of a member or function of the body," under Section 105(c)(1). In view of our holding in this case, we find it unnecessary to consider whether and under what circumstances such a mental condition may qualify for a section 105(c) exclusion.

ry and operate independent of such factors as compensation, length of service, and company profitability. Thus, in order to come within the scope of section 105, taxpayer must first show by "clear indicia" that the deferred compensation plans in question were *intended* to also provide accident or health benefits. *Caplin v. United States*, 718 F.2d 544, 549 (2nd Cir.1983); *see also Paul v. United States*, 682 F.Supp. 329, 332 (E.D.Mich.1988), *aff'd*, 872 F.2d 1027 (6th Cir.1989); *Gibson v. United States*, 643 F.Supp. 181, 184 (W.D.Tenn. 1986); *Gordon v. Commissioner*, 88 T.C. 630, 640 (1987) (a deferred compensation plan ordinarily will not be construed as providing both retirement *and* accident or health benefits absent proof that the employer intended the plan to be a dual purpose plan).

Several factors have been held relevant in determining whether a deferred compensation plan was intended to provide accident or health benefits, including: (1) a statement in a written plan that its purpose is to qualify as an accident or health plan within the meaning of the Internal Revenue Code and that the benefits payable under it are eligible for income tax exclusion; (2) specification in a plan that the benefits payable are those amounts incurred for medical care in the event of personal injury or sickness; (3) terms in a plan that the benefits payable are limited to legitimate medical expenses;[4] and (4) a provision allowing an employee to be compensated for specific injuries or illness, such as the loss of a limb. *See Caplin*, 718 F.2d at 549; *Paul*, 682 F.Supp. at 332; *Gordon*, 88 T.C. at 640.

■ While these factors do not represent an exhaustive list of health plan "indicia," we note that the plans at issue here fail to satisfy any of them. The plans do not state that they were meant to be accident or health plans under section 105 or for any other purpose. There are no provisions for reimbursement of actual or anticipated medical expenses. The plans do not pro-

vide payments for anything less than total and permanent disability. Specific illness or injuries are not distinguished, nor are there variations in payments according to the severity of the illness or injury.

The only indicia of a "dual purpose" are statements contained in the summary descriptions of each plan. While we acknowledge that language in a plan description or summary may, in some cases, provide "clear indicia" of a dual purpose, we find the language in these summary descriptions to be, at best, ambiguous. The summary description of the defined benefit plan states:

> The purpose of the Plan is to reward eligible employees for long and loyal service to the Company by providing for their financial security at retirement. *It may also provide some additional protection in the event of death, disability, or other termination of employment.* The Plan is established and maintained solely for the exclusive benefit of the eligible employees and their beneficiaries.

(emphasis added). The summary description of the pension plan contains similar language. The sentence upon which taxpayer relies, highlighted above, does not indicate an intention to provide accident or health benefits. All deferred compensation plans which include "disability" as an event which may trigger distributions provide "some additional protection" in the case of injury or illness. A deferred compensation plan need not also have to be an accident or health plan to achieve that goal. In sum, taxpayer has fallen short of meeting his burden of establishing by clear indicia that the defined benefit and pension plans at issue here were intended to be dual purpose plans.

Relying on two cases which never considered the question of what constitutes a dual purpose plan—*Wood v. United States*, 590 F.2d 321 (9th Cir.1979), and *Masterson v. United States*, 478 F.Supp. 454 (N.D.Ill. 1979)—taxpayer proposes a broader test

---

**4.** Regardless of whether the payments were made under a section 105(c) plan, distributions received as reimbursements for actual medical expenses are separately deductible, under section 105(b).

than the standard utilized in *Caplin, Paul,* and *Gordon.* Taxpayer argues that we should proceed immediately to the question of whether the distributions satisfied the requirements of section 105(c)(1) and (2), without an initial determination of whether the distributions were made from an "accident or health plan." We find taxpayers argument without merit. As was noted by the Second Circuit in considering an identical argument, focusing on the "triggering event" instead of the "purpose" of the plan erroneously puts the cart before the horse. *Caplin,* 718 F.2d at 547. *See also Rosen v. United States,* 829 F.2d 506, 510 (4th Cir. 1987) (emphasis is on the underlying plan, not the fact that payments were made because of a disability). A plain reading of section 105, entitled "[a]mounts received under accident and health plans," indicates that Congress intended to allow income exclusions only for distributions received from "accident or health" plans. Section 105(a) specifically limits application of this provision to payments received through accident or health insurance:

> Except as otherwise provided in this section, amounts received by an employee through *accident or health insurance* for personal injuries or sickness shall be included in gross income....

26 U.S.C. § 105(a) (emphasis added). Further, section 105(e) provides that payments received from accident or health plans, such are allegedly at issue here, are treated the same as accident or health insurance. 26 U.S.C. § 105(e). Thus, there is simply no legal support for the test proposed by taxpayer in this instance.

Taxpayer's argument also fails as a matter of common sense. Most, if not all, deferred compensation plans set forth a number of events which may trigger distributions. In addition to retirement, deferred compensation plans often provide for disbursements in the case of death, termination, and total and permanent disability. The common element of each "triggering event" is the end of the employer/employee relationship. The mere fact that disability results in premature retirement from the company does not automatically transform a deferred compensation plan into an accident or health plan. Assuming that distributions were originally intended to act as deferred compensation, we can think of no reason for treating money received on account of disability any different from money received on account of retirement, death or termination.

### B. Computation of Benefits Under Section 105(c)(2).

▮ Notwithstanding the above, even if the taxpayer was able to show that the plans were intended to provide health benefits, he would still not be entitled to exclude the distribution from his gross income. Under section 105(c)(2), the accident or health plan must "compute [the distributions] with reference to the nature of the injury without regard to the period the employee is absent from work." 26 U.S.C. § 105(c)(2). Courts which have considered this provision have held that the phrase "with reference to the nature of the injury" requires that the plan vary the distributions according to the "type and severity" of the injury. *Beisler v. Commissioner,* 814 F.2d 1304 (9th Cir.1987) (en banc). "Exclusion is permitted only under plans which vary benefits to reflect a particular loss of bodily function." *Rosen,* 829 F.2d at 509. Neither of these plans contain a provision which varies distributions according to the type or severity of the injury suffered. Under both the defined benefit plan and the pension plan at issue here, the amount of the distributions were determined by three factors only; the employee's salary, his years of service, and the extent to which his benefits vested at the time he suffered his disability.

### III.

In conclusion, we find that taxpayer has failed to meet his burden of showing by "clear indicia" that the defined benefit plan and pension plan at issue here were intended to provide accident or health benefits. In addition, we find that the plans failed to vary distributions according to the "type and severity" of the injury, as is required for exclusion from income under section 105(c)(2). Consequently, we AFFIRM the

tax court's holding that the $793,055 received by taxpayer from the defined benefit plan and pension plan was not excludable from his gross income, under section 105(c).