**Dale CRAFT, Rudolph Hamblin, and Richard Block, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. IP 93–776–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 20, 1995.

926

Patrick J. Bennett, Bennett & Sheff, Lance Wittry, Indianapolis, IN, for plaintiffs.

Samuel D. Brooks, Trial Atty., Tax Div. U.S. Dept. of Justice, Washington, DC, Jeffrey L. Hunter, Asst. U.S. Atty., Office of the U.S. Atty., Indianapolis, IN, for defendant.

## ORDER ON SUMMARY JUDGMENT

McKINNEY, District Judge.

This cause comes before the Court on cross-motions for summary judgment filed by the plaintiffs, Dale Craft, Rudolph Hamblin and William Block, and by the United States. For the reasons provided below, the Plaintiffs' motion for summary judgment is DENIED, and the motion for summary judgment filed by the United States is GRANTED.

### I. FACTUAL & PROCEDURAL BACKGROUND

The facts of this case are mostly undisputed. Plaintiffs, Dale Craft ("Craft"), Rudolph Hamblin ("Hamblin"), and William Block ("Block") (collectively the "Officers"), are former officers of the Indiana State Police Department ("ISPD"). Compl. ¶¶ 18, 5, 30; Ans. ¶¶ 18, 5, 30. Craft became employed with ISPD in 1955. He was injured on January 27, 1963, in an automobile accident that occurred while he was performing his police duties; he continued to work until he was placed on full "line of duty" disability as a result of his injuries on October 5, 1971. Compl. ¶¶ 5, 6, 8; Ans. ¶¶ 5, 6, 8.

Hamblin began working for the ISPD in 1966, but was placed on full line of duty disability on August 21, 1984, after he was determined to be without the necessary physical and mental health to perform his assigned duties. Compl. 30, 31; Ans. 30, 31. Block began working for the ISPD in 1956. During the performance of his police duties on December 13, 1966, he became injured while assisting persons at the scene of an automobile accident. Compl. ¶¶ 18, 19; Ans. ¶¶ 18, 19. He continued working until May 5, 1977, when he was placed on full line of duty disability. Compl. ¶ 20; Ans. ¶ 20.

The Officers each filed a Federal Income Tax Form 1040 for the three years preceding their requests to the Internal Revenue Service ("IRS") for tax refunds.[1] The Officers claim, and the United States does not dispute, that they paid income tax on the full amount of the line of duty disability benefits they received for each of the years in question. Craft and Hamblin requested a refund of those taxes in 1990, and Block requested a refund in 1991.[2] Compl. ¶¶ 16, 21, 23, 3, 9, 10, 28, 29, 32, 33; Ans. 16, 21, 23, 3, 9, 10, 28, 29, 32, 33; Def's Ex. A and Ex. B. Each Officer subsequently had his request for a refund denied by the IRS. Pls' Ex. H, Ex. I, Ex. J; Compl. ¶¶ 9, 21, 33; Ans. ¶¶ 9, 21, 33. In addition, the Officers claim to have made contributions to the Employee Insurance Fund (a fund established exclusively by employee contributions), the name of which has been changed to the Employee Death and Disability Fund as reflected in the 1991 revised Pension Trust Agreement and Supplemental Agreement. See Def's Ex. D; Pls' Ex. G and K. Those contributions, however, have not been clearly identified as contribu-

1. Block filed a Form 1040 for 1987, 1988, 1989 and 1990, and an Amended U.S. Individual Tax Return, which constituted his claim for a refund, on September 19, 1991. Gov't's Ex. A, Req's for Admissions, 6.b, 7.b; Gov't's Ex. B, Response to Interrog., 6.b, 7.b. However, Block concedes that his claim for a refund for taxable year 1987 is barred by 26 U.S.C. § 6511(a) (providing a limitations period consisting of the later of 2 years from the time the tax was paid, or 3 years from the time the return was filed, to file claims for refunds of any overpayment of taxes). See Pls' Brf. in Opp. to Def's Mot. for Sum.J. and in Supp. of Pls' Mot. for Sum.J., n. 2. Likewise,

Craft and Hamblin, who filed returns for the taxable years of 1986, 1987, 1988 and 1989, and then requested refunds in 1990, have conceded their claims for taxable year 1986 are barred by 26 U.S.C. § 6511(a). Id., nn. 4, 6.

2. Craft seeks a total refund in the amount of $9,783.00 for the three years preceding his refund request; Hamblin seeks a total refund in the amount of $4,168.00; and Block seeks a total refund in the amount of $5,021.00. Compl. 10, 32, 23; Ans. 10, 32, 23; Pls' Brf. in Opp. nn. 2, 4, 6.

tions to that exclusively employee-generated plan. William C. Krueger, who signed a letter on ISPD letterhead above the title, "Acting Commander, Pension Benefits Section," merely stated that the Officers made contributions as of certain dates, and specified the amounts of those contributions.[3] *See* Pls' Ex. G (Letter dated March 3, 1992 from Krueger).

On June 17, 1993, the Officers filed their complaint in this Court, seeking a refund of the taxes they paid on the alternative grounds that the disability benefits at issue are in the nature of worker's compensation, or they are health or accident insurance benefits from a fund to which each officer had made prior contributions. Compl. ¶¶ 12, 25. In their prayer for relief each officer demands judgment in the amount of the alleged tax overpayment, interest as allowed by law, and attorneys' fees and costs.

The United States moved this Court for summary judgment on September 12, 1994, after which the Officers likewise moved for summary judgment in their favor on October 11, 1994. The issues have been fully briefed and are now ready for resolution.

## II. STANDARDS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Although a party bringing a motion for summary judgment must demonstrate that there is no genuine issue of fact for trial, if that burden is met, the party opposing the motion must come forward with evidence of a genuine factual dispute. *Celo-*

tex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Mere conclusory assertions, whether made in pleadings or affidavits, are not sufficient to defeat a proper motion for summary judgment. *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir.1985).

From the Supreme Court's 1986 trilogy of decisions on summary judgment, *see Celotex Corp.*, 477 U.S. 317, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), it is clear that entry of summary judgment is mandatory when the requirements of Rule 56 are met. *See Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir.1989); *Spellman v. Commissioner*, 845 F.2d 148, 152 (7th Cir. 1988). When, as here, the parties both claim the absence of genuine issues of material fact, and both sides agree to essentially the same facts, the court is obliged to apply the facts to the law and determine which party is entitled to judgment as a matter of law.

## III. DISCUSSION

The United States raises three main issues in their motion for summary judgment. The first issue, whether the tax refund claims for the years of 1986 for Craft, and 1987 for Block and Hamblin are barred by the limitations period for bringing such claims pursuant to the Internal Revenue Code ("IRC"), has been mooted by the Officers' response to the Defendant's motion.[4] Because the Officers have conceded that their claims for those years are barred, the Court will not address this statute of limitations defense.

---

**3.** The Officers have filed certain papers in support of their motion for summary judgment and in opposition to Defendant's motion, that are not in conformity with Fed.R.Civ.P. 56(e). The letters comprising Exhibits A, B, C, G, H, I and J, and the photocopies of reports comprising Exhibits D, E, and F, have not been attached to an affidavit, are not affidavits themselves, and have not been certified or sworn as required by Rule 56(e) to constitute admissible evidence. Nevertheless, because the United States refrained from

filing a motion to strike, or to otherwise object to these submissions, any challenge to their admissibility has been waived. *See Lac Du Flambeau Band of Superior Chippewa Indians v. Stop Treaty Abuse–Wisconsin, Inc.*, 991 F.2d 1249, 1259 (7th Cir.1993); *Friedel v. City of Madison*, 832 F.2d 965, 971 n. 4 (7th Cir.1987).

**4.** *See supra,* note 1.

■ Second, the United States argues that the Officers' disability benefit payments are not excludable from gross income pursuant to IRC § 104(a)(1), because said payments were not made pursuant to a workers compensation act or a statute in the nature of a workers compensation act.[5] This exclusion in the IRC has been strictly construed, to comport with the general rule that all income is taxable unless it is specifically excluded. *See Kane v. United States,* 43 F.3d 1446, 1449, 1451 (Fed.Cir.1994); *Nielsen v. United States,* 820 F.Supp. 484 (N.D.Cal.1993), *vac'd on other grounds,* 17 F.3d 395 (9th Cir.1994); *Smelley v. United States,* 806 F.Supp. 932, 935 (N.D.Ala.1992) *aff'd per curiam,* 3 F.3d 389 (11th Cir.1993); *Givens v. Commissioner of Internal Revenue,* 90 T.C. 1145, 1151, 1988 WL 59902 (Tax Ct.1988). According to the United States, the Indiana statute pursuant to which the Officers were paid is not in the nature of a worker's compensation act because it does not require a causal nexus between the disability and an officer's work activities.

■ Finally, the United States argues that exclusion pursuant to § 105 of the IRC does not apply to the disability payments in question, because the amount of each officer's payment was not computed with reference to the nature of the injury.[6] Accident or health insurance payments may be excluded from gross income when they are made pursuant to a plan containing "clear indicia" of its intent to provide accident or health benefits, and the taxpayer proves that the payment was for the permanent loss or loss of use of a member or function of his body, and the payment amounts vary according to the type and severity of the injury. 26 U.S.C. § 105(a), (c); *See Berman v. Commissioner of Internal Revenue,* 925 F.2d 936, 939 (6th Cir.1991); *Dorrah v. Commissioner,* 68 Tax Ct.Mem.Dec. (CCH) 337, 341, 1994 WL 411544 (T.C. Aug. 17, 1994); *Armstrong v. Commissioner,* 66 Tax Ct.Mem.Dec. (CCH) 1502, 1505, 1993 WL 501921 (T.C. Dec. 1993); *Christensen v. United States,* 57 A.F.T.R.2d (P–H) (D.Minn. Mar. 26, 1986).

The Officers claim, however, that the undisputed facts entitle them to judgment as a matter of law on the issue of whether the disability payments were made pursuant to a statute in the nature of a worker's compensation act. Alternatively, they claim to be entitled to judgment as a matter of law under the theory that the disability payments they received came from a fund established exclusively by contributions of the ISPD employees. Under this theory, the payments should not be taxed because they already were taxed as gross income when the employees received them, causing them, by definition, to be excluded from § 105(a).

---

**5.** Gross income includes "all income from whatever source derived." 26 U.S.C. § 61(a). This section of the IRC reflects Congress's intent to use its full taxing power. *Helvering v. Clifford,* 309 U.S. 331, 334, 60 S.Ct. 554, 556, 84 L.Ed. 788 (1940). The disability payments to the Officers, therefore, should be included in gross income unless they are specifically excluded pursuant to the IRC. Section 104(a)(1) of the IRC, (26 U.S.C.) excludes from gross income "amounts received under workmen's compensation acts as compensation for personal injuries or sickness."

Treasury Regulation 1.104–1(b) provides further clarification about this type of exclusion: Section 104(a)(1) excludes from gross income amounts which are received ... under a workmen's compensation act ... or under a statute in the nature of a workmen's compensation act ... for personal injuries or sickness incurred *in the course of employment....* However, section 104(a)(1) does not apply to a retirement pension or annuity to the extent that it is determined by reference to the employee's age or length of service, or by the employee's prior contributions, even though the employee's retirement is occasioned by an occupational injury or sickness.

**6.** Also excluded from gross income is any amount "received through accident or health insurance for personal injuries or sickness (other than amounts received by an employee, to the extent such amounts (A) are attributable to contributions by the employer which were not includable in gross income of the employee, or (B) are paid by the employer)". 26 U.S.C. § 104(a)(3).

When the amount is received by an employee from an employer, an exclusion is also available for amounts that:
(1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer ..., and
(2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work.
26 U.S.C. § 105(c).

## A. Section 104(a)(1) Issue

The statute pursuant to which the Officers were awarded disability payments provides in pertinent part:

(b) Authority is hereby granted to the department to establish, operate, and make necessary contributions to a disability reserve account for the payment of disability expense reimbursement and pension to disabled employee beneficiaries. No monthly disability pension shall exceed the maximum basic pension amount. However, in the case of disability incurred in line of duty, such employee beneficiary may receive not more than forty dollars ($40) per month for each dependent ... in addition to the monthly disability pension payment under this chapter....

\* \* \* \* \* \*

(d) A disability payment made under this chapter is worker's compensation in lieu of a payment under IC 22–3–2 through 22–3–7.

Ind.Code § 10–1–2–4 (1994 Supp.) (hereinafter the "ISPD Disability Statute" or the "Statute"). The Officers claim that this Statute, although not a worker's compensation act *per se,* is in the nature of a worker's compensation act. *See* Treas.Reg. 26 C.F.R. § 1.104–1(b). Their primary support for this contention is that the payments they received under the Indiana State Police Department Pension Trust Agreement and Supplemental Agreement of 1987, Amended 1991, (the "Pension Plan"), were themselves in the nature of worker's compensation.

 The Officers, however, fail to make the proper inquiry for determining whether the payments can be excluded from gross income pursuant to § 104(a)(1). The focus should be on the purpose and function, as revealed on its face, of the statute pursuant to which the Pension Plan was authorized, not on the Plan itself or the purpose for the payments. *Kane,* 43 F.3d at 1450; *Smelley,* 806 F.Supp. at 935 (stating that Treas.Reg. § 1.104–1(b) requires an examination of the nature of the statute, not the source of the injury). Neither a collective bargaining agreement nor a pension trust agreement constitute a statute for purposes of

§ 104(a)(1). *See Rutter v. Commissioner of Internal Revenue,* 760 F.2d 466, 468 (2d Cir. 1985) (holding sick leave payments not excludable from gross income because the labor contract on which they were based is not a "statute" for purposes of Treas.Reg. § 1.104–1(b)), *cert. denied,* 474 U.S. 848, 106 S.Ct. 141, 88 L.Ed.2d 116 (1985).

 For the Officers's argument to prevail, and this Court to be obliged to examine the operation of the Pension Plan, the Officers would have to prove either that the Pension Plan has been incorporated into the ISPD Disability Statute by reference, or that the Statute itself is a "dual purpose" statute. *Compare* Rev. Ruling 83–77 with Rev. Ruling 81–47; *see Kane,* 43 F.3d at 1450 (finding statute not dual purpose because it provided disability payments regardless of the cause of disability); *Frye v. United States,* 72 F.Supp. 405, 408 (D.D.C.1947) (finding police and firemen's relief act to have a dual purpose, requiring the court to inquire about which part of the act authorized the payments in question). The Officers have the burden of proving the excludability of their disability benefits. *Watts v. United States,* 703 F.2d 346, 348 (9th Cir.1983) (citing *Lewis v. Reynolds,* 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932)). They have, however, offered no evidence to demonstrate that the Pension Plan has been incorporated into the ISPD Disability Statute by reference. Consequently, the Court is not obliged to investigate the operation of the Pension Plan on that basis.

 One provision of the ISPD Disability Statute, however, suggests that the Statute has a dual purpose. The Statute specifically provides for an additional payment equal to forty dollars ($40.00) per month for each qualified dependent when the disability was incurred in the line of duty. This is the only provision of the ISPD Disability Statute that mentions a work-related disability. Although this provision would seem to qualify the Statute for dual purpose treatment, the Court need only inquire into the aspects of the payments which might be authorized by this provision. *See Frye,* 72 F.Supp. at 408. No evidence has been presented by the Officers, however, to demonstrate that any of the pay-

ments they received were authorized by this portion of the statute. The United States has conceded, and this Court agrees, that if the Officers had proved they received payments pursuant to this provision of the ISPD Disability Statute, those payments would have been excluded from gross income. The base disability payments to which this forty dollars is a supplement, however, cannot be excluded because the remainder of the statute does not distinguish between job-related and non-job-related disabilities. Consequently, those disability payments do not represent amounts paid pursuant to a worker's compensation act, or a statute in the nature of a worker's compensation act.

■ To further support viewing the ISPD Disability Statute as a dual purpose statute, the Officers point to the portion of the ISPD Disability Statute which states that disability payments made thereunder are "worker's compensation in lieu of a payment under IC 22–3–2 through 22–3–7." Ind.Code § 10–1–2–4(d). However, because this provision became effective on July 1, 1994, and the taxable years at issue are 1987 to 1990, this provision, even if it were enough to color the ISPD Disability Statute a worker's compensation hue, would not apply to the facts of this case.

■ Moreover, the language of the provision cannot change the nature of the ISPD Disability Statute. The Court is not required to accept the state legislature's characterization of the ISPD Disability Statute, for to do so might frustrate the intent of Congress to distinguish between worker's compensation and other payments. *See Take v. Commissioner of Internal Rev. Serv.*, 804 F.2d 553, 556 (9th Cir.1986). The ISPD Disability Statute cannot be made into a worker's compensation act merely by renaming it. Worker's compensation laws are intended to provide "sure and swift" compensation to workers who have work-related injuries or illnesses. *Id.* at 557. The laws allow workers an alternative to litigating the issue of their employer's negligence, and provide, instead, for a scheme of strict liability of the employer. *Id.* Consequently, the most distinctive feature of such laws is their limited scope—they apply only to injuries or illness-

es incurred by virtue of the employment. *Id.* To come within § 104(a)(1), therefore, a statute must require as a precondition to eligibility, that the injuries or illnesses be work-related. *Id.; Kane*, 43 F.3d at 1450; *Rutter*, 760 F.2d at 468; *Smelley*, 806 F.Supp. at 934; *Abbotts v. Commissioner*, 50 Tax Ct.Mem. Dec. (CCH) 953, 955, 1985 WL 15088 (Sept., 1985).

■ The ISPD Disability Statute does not require, on its face, that the disability arise out of and in the course of employment. *Compare* Ind.Code § 22–3–2–2. To come within the purview of § 10–1–2–4, an ISPD officer need only be disabled; the authorization to pay disability benefits is the same regardless of the cause of the officer's disability. Indiana courts have noted that establishing that an employee's injury or illness arose out of or in the course of employment constitutes a jurisdictional element of a worker's compensation claim. *Weldy v. Kline*, 616 N.E.2d 398, 403–04 (Ind.App.1993); *Ski World, Inc. v. Fife*, 489 N.E.2d 72, 74 (Ind. App.1986). "Because it is the trigger to eligibility under workmen's compensation laws, the causal connection between employment and injury or sickness is a frequently-litigated issue in workmen's compensation cases." *Take*, 804 F.2d at 557. The absence of a requirement for this causal connection, therefore, demonstrates that the ISPD Disability Statute is not a statute in the nature of a worker's compensation act.

Another distinctive feature of worker's compensation acts is that they provide the exclusive remedy against an employer for an employee's work-related injuries. *See* Ind. Code § 22–3–2–6 (providing that the rights and remedies granted by the Indiana worker's compensation act "shall exclude all other rights and remedies" of the employees). Indiana Code § 10–1–2–4 does not provide the exclusive remedy to state police officers for illnesses or injuries incurred on the job. *See Webb v. Jarvis*, 553 N.E.2d 151, 158 (Ind.App.1990), *vac'd on other grounds*, 575 N.E.2d 992 (Ind.1991); Ind.Code § 22–3–2–2 (providing that every employer and employee, unless specifically excluded, shall comply with the Indiana worker's compensation provisions for injuries or death arising out of

and in the course of employment); Ind.Code § 22–3–2–18 (providing that Indiana's Worker's Compensation provisions apply to the state and all political divisions thereof).

The Indiana Court of Appeals has cited this lack of exclusivity to support its statement that benefits provided under the ISPD Disability Statute are not like worker's compensation. *See Webb,* 553 N.E.2d at 158. Indiana's interpretation of its own statute, therefore, does not support a finding that it is a dual purpose statute, or a statute in the nature of a worker's compensation act. The provision that payments made under the ISPD Disability Statute are to be considered worker's compensation, were it to apply to the facts in this case, can be reconciled with the Indiana Worker's Compensation provisions only by construing it to mean that *if* an officer who is injured on the job seeks payment thereunder, such payment is in lieu of worker's compensation. That is, there is no hint that the ISPD Disability Statute is meant to be an exclusive remedy. This fact further distinguishes the ISPD Disability Statute from the Indiana Worker's Compensation Act, which specifically states that it is the exclusive remedy for employees subject to its provisions. *See* Ind.Code § 22–3–2–6.

The ISPD Disability Statute, moreover, does not vary payments with the type and severity of the disability. It merely provides for a payment not to exceed the maximum basic pension amount. The absence of any structure by which the ISPD is required to compute payments in relation to the type of injury, also suggests that the ISPD Disability Statute is not in the nature of a worker's compensation act. *See* Ind.Code §§ 22–3–3–10 through 3–22.

### B. Section 105 Issue

If the Officers' disability benefits were deemed to have come from an accident or health insurance plan, they could be excluded from gross income for one of two reasons. First, they might be excluded pursuant to § 104(a)(3), which states that gross income does not include "amounts received through accident or health insurance for personal injuries or sickness," unless those amounts can be traced to an employer-employee relation-

ship and were not otherwise includable in the employee's gross income. The converse of this statement is found in IRC § 105(a), which states that "except as otherwise provided in this section," accident or health insurance amounts shall be included in gross income if they originate from a fund to which the employer contributed amounts that were not already included in an employee's gross income, or if the amounts came directly from the employer.

The Officers argue that because their disability payments came from a fund to which they purportedly contributed, those payments should be excluded from gross income. The prima facie case for exclusion under § 104(a)(3) and § 105(a), requires proof that the Officers made contributions to a fund from which their disability payments were distributed, and that those distributions were attributable to their contributions. *See* Treas.Reg. § 1.104–1(d) (stating that the § 104(a)(3) exclusion applies to amounts from a fund which is maintained exclusively by employee contributions, or one jointly established by employer and employee contributions, and the amounts are attributable to the employee's contribution). The IRC does not intend to double-tax individual taxpayers, which is why § 104(a)(3) and § 105(a) specify that "contributions by the employer which were not includable in the gross income of the employee" are included in gross income. By implication this means that if the contributions were already included in the gross income of an employee, the subsequent drawing on the fund by the employee will not be treated as gross income. *See* Treas.Reg. § 1.104–1(d).

The problem with the Officers's argument is that they have offered no evidence that their disability payments originated from a fund maintained exclusively by employee contributions. In fact, the evidence supports the opposite view. The Officers supplied the Court with copies of letters from the ISPD Commander of the Benefits Section, in which is stated that each officer was placed on full "line of duty" disability, and that each "is presently receiving a disability income from the Indiana State Police Benefit Fund." Ex.'s A, B and C. The Police Bene-

fit Fund, however, is one to which employees are not required to contribute, and is in fact prohibited from being commingled with any funds representing authorized deductions from the salary or wages of Employees." Gov't's Ex. D, ¶ 14; Pls' Ex. K, Supp'l Ag. ¶ 13. The Officers therefore, have failed to meet their burden of proving that they made contributions to a fund from which their disability payments were distributed, and that those distributions were attributable to their contributions. Even if they could prove that their contributions had been allocated to the Employee Insurance/Death and Disability Fund, a fact they have not established by the evidence offered in support of summary judgment,[7] the Officers have failed to support the other prong of their prima facie case. *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 (7th Cir.1994) (citing *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2554, for the proposition that a party who will bear the burden of proof at trial, and who fails to make a showing sufficient to establish an essential element of the party's case, will lose at summary judgment stage). Consequently, the Court finds, as a matter of law, that because the payments to the Officers did not originate from a fund to which employees contributed, the Officers may not exclude the payments pursuant to § 104(a)(3).

■ The second reason by which health and accident insurance payments may be excluded from gross income is found in § 105(c), which is an exception to § 105(a). *Watts*, 703 F.2d at 349. To qualify for an exemption pursuant to § 105(c), the Officers must first prove that the fund from which they were paid was intended to provide accident or health benefits. *Berman v. Commissioner of Internal Rev.*, 925 F.2d 936, 938 (6th Cir.1991). Second, they must prove that

the amounts constituted payments for the permanent loss or loss of use of a member or function of the body (or permanent disfigurement).[8] *Rosen v. United States*, 829 F.2d 506, 509 (4th Cir.1987); *Hines v. Commissioner*, 72 T.C. 715, 718, 1979 WL 3720 (1979). And third, the Officers must prove that the amounts were computed with reference to the nature and severity of the injury, without regard to the length of time the Officers were absent from work. *Rosen*, 829 F.2d at 509; *Armstrong*, 66 Tax Ct.Mem. Dec. at 1506; *Hines*, 72 T.C. at 720.

■ The underlying purpose of 26 U.S.C. § 105(c) is to provide tax relief to a taxpayer who suffers a "severe physical injury which permanently and significantly lessens the quality of [his] life. . . ." *Berman*, 925 F.2d at 938 (citing *Hines*, 72 T.C. at 718–19); *but see Watts*, 703 F.2d at 352 n. 24 (in which the Ninth Circuit declined to adopt the *Hines* court's view regarding the purpose of § 105(c)). Accident and health plans are intended to protect employees from the expense and hardship of serious illnesses or injuries, and operate independently of the employee's compensation, length of service and the company's profitability. *Id.* at 939. Therefore, to come within the scope of § 105(c) a taxpayer must show by "clear indicia" that the compensation plan in question was intended to provide accident and health benefits. *Id.; Rosen*, 829 F.2d at 509.

■ Factors to consider in determining whether the plan in question qualifies include: (1) whether the written plan states that its purpose is to qualify as an accident or health plan within the meaning of § 105; (2) whether the plan specifies that the benefits payable are those incurred for medical care in the event of personal injury or illness; (3) whether the plan is limited to the pay-

---

7. The Officers's only evidence is a letter from the 1992 Acting Commander of the Pension Benefits Section, in which is stated that each of the plaintiffs made "contributions" in a specific amount as of a certain date. Those contributions could have been allocated to the Employee Insurance/Employee Death and Disability Fund (the only exclusively employee maintained fund), or they could have been allocated to the Police Pension Fund. *See* Pls' Ex. K, ¶¶ 23, 24; Pls' Ex. K, Supp'l Agrmt. ¶ 14; Gov't's Ex. D., ¶ 4, ¶ 14(b).

8. For purposes of this motion, the United States does not contest this part of the test. *See* United States' Reply to Pls' Mot. in Opp. to Def's Mot. for Sum.J. and Response to Pls' Mot. for Sum.J. at 7 n. 2. However, the Court notes that the Pension Plan does not distinguish between permanent and temporary disability, nor among full or partial disability.

ment of benefits for legitimate medical expenses; and (4) whether the plan provides for compensation of specific injuries, such as the loss of a limb. *Berman,* 925 F.2d at 939. Although this list is not exhaustive, the Court finds that the ISPD Pension Plan does not qualify as a health or accident plan.

The Pension Plan pursuant to which the Officers received their disability awards makes no declaration of its intent to provide health and accident coverage, nor does it limit benefit payments to those incurred for medical care, or for legitimate medical expenses. It does not even mention compensation for specific injuries, nor does it distinguish between permanent and partial disability, varying payment accordingly. Courts have interpreted the health or accident plan requirement of § 105(c) to mean at least that a definite method of providing such benefits has been specified. *Caplin v. United States,* 718 F.2d 544, 549 (2d Cir.1983); *Paul v. United States,* 682 F.Supp. 329, 332 (E.D.Mich.1988); *Gibson v. United States,* 643 F.Supp. 181, 184 (W.D.Tenn.1986). Although language specifying how much is paid for certain types of disabilities or injuries is not an absolute prerequisite to the existence of an accident or health plan, its absence certainly militates against finding that an agreement attached to a Pension Trust Agreement is a health or accident plan. *See id.; Christensen,* 57 A.F.T.R.2d (P–H) (D.Minn. Mar. 26, 1986). Another feature of the plan under which the Officers were paid which distinguishes it from a health or accident plan, is that it allows for the payment of monthly amounts to officers who were injured more than ten years prior to the onset of the payments. For all of these reasons, the Court finds the plan pursuant to which the Officers received disability payments not to be a health or accident plan for purposes of § 105(c).

Even if the plan could be considered a health or accident plan, the Officers still could not employ the § 105(c) exclusion, because the plan does not compute payments with reference to the nature and severity of the injury, without regard to the length of time the Officers were absent from work. 26 U.S.C. § 105(c)(2). To prevail under this code section, the Officers must demonstrate that the "instrument or agreement under which the amounts are paid must itself provide specificity as to the permanent loss or injury suffered and the corresponding amount of payments to be provided." *Rosen,* 829 F.2d at 509. This requirement is interpreted to mean that the plan must vary benefits to reflect the particular type and severity of injury suffered. *Id.* (citing *Beisler,* 814 F.2d 1304, 1308 (9th Cir.1987)); *accord Dorrah v. Commissioner,* 68 Tax Ct. Mem.Dec. at 341.

According to the legislative history of § 105(c)(2), Congress intended to distinguish between "nature-of-the-injury" payments and "absence-from-work" payments. *Id.* at 510. If the payments are designed to replace the income an officer has lost due to disability, rather than to compensate for the injury itself, then the payments cannot be said to be computed without regard to the length of time the officer was absent from work. *See Armstrong,* 66 Tax Ct.Mem.Dec. at 1507. The ISPD Officers are entitled to payments "which shall commence one month after payment of [their] last regular wages from the Department and shall continue as long thereafter as disability exists...." Gov't's Ex. D, ¶ 5; Pls' Ex. K, Supp'l Ag., ¶ 3. Payments such as this are designed to replace the income an officer lost due to disability, and are computed with regard to his absence from work. *See Christensen,* 57 A.F.T.R.2d. Moreover, such payments are also not computed with respect to the nature of the injury. Consequently, the requirements of IRC § 105(c) are not met by this plan, and the Officers are therefore not entitled to exclude the disability payments they received from their gross income.

## IV. CONCLUSION

The Officers and the United States have both moved for summary judgment. The Officers failed to adequately support their claim that they are entitled to exclude the disability payments they received from their gross income under either theory they presented. In addition, the Officers have failed to produce evidence that would prevent this Court from granting judgment as a matter of

law in favor of the United States. For the reasons given above, the Court now DENIES the Officers's motion for summary judgment, and GRANTS summary judgment in favor of the United States.

IT IS SO ORDERED.