T.C. Memo. 2000-160


UNITED STATES TAX COURT


ASA EUGENE PEARSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15981-98.                    Filed May 18, 2000.


Asa Eugene Pearson, pro se.

<u>George E. Gasper</u>, for respondent


MEMORANDUM OPINION


GOLDBERG, <u>Special Trial Judge</u>:  Respondent determined a
deficiency in petitioner's Federal income tax of $1,453 for the
taxable year 1995.  Unless otherwise indicated, section
references are to the Internal Revenue Code in effect for the
year in issue, and all Rule references are to the Tax Court Rules
of Practice and Procedure.

After a concession,[1] the issue for determination is whether disability payments received by petitioner in 1995 are includable in gross income.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing the petition, petitioner resided in Fort Worth, Texas.

In 1972, petitioner began working for General Motors Corporation (General Motors) at its Arlington, Texas, assembly plant. As an employee, petitioner was included in General Motors' long-term disability plan (the disability plan) which General Motors funded through Metropolitan Life Insurance Company (MetLife). General Motors paid all the policy premiums and did not deduct the cost of the premiums from employee wages.

Because of the repetitious nature of the work and other stressful situations at the plant, petitioner began to suffer from severe depression which affected his ability to work. By 1985, his condition worsened, and petitioner was on sick leave for most of the year.

---

[1] At trial, petitioner failed to offer any evidence, whatsoever, contesting the Commissioner's determination in the notice of deficiency that he failed to report income from General Motors of $72 for the 1995 taxable year. Accordingly, petitioner is deemed to have conceded the issue. See Rules 149(b), 142(a).

On January, 1, 1986, petitioner retired from General Motors and began receiving monthly disability benefits.  Petitioner received his retirement and his disability benefits in two separate monthly checks.  Petitioner received one check from General Motors and one check directly from MetLife.  The payments petitioner received from MetLife were payments made under the disability plan and were based on the number of years petitioner was employed by General Motors.

Though petitioner initially included his disability benefit payments received from MetLife in gross income on his Federal income tax returns, on advice of a tax preparer, petitioner filed a Form 1040X, Amended U.S. Individual Income Tax Return, for the 1987 taxable year and reported the MetLife payments as nontaxable disability income pursuant to sections 105(c)(1), 105(c)(2), and section 1.105-3, Income Tax Regs., and requested a refund for excess income tax withholding.

The Internal Revenue Service (IRS) allowed the requested amounts as overpayments that it offset against outstanding income tax liabilities.  Petitioner continued to request a refund for excess income tax withholding for every taxable year from 1987, up to, and including, the year in issue.  Once petitioner's income tax liabilities were paid in full, the IRS refunded the balance of the claimed excess withholding for tax years up to, and including, 1995.

Petitioner testified that sometime after 1991 an IRS representative told him to stop reporting the MetLife payments on his Federal income tax return because the payments constituted nontaxable income. In accordance with the advice he purportedly received from the IRS, petitioner stopped reporting the payments from MetLife.

In 1996, petitioner received a Form W-2, Wage and Tax Statement, from MetLife reporting the amount he had received from MetLife for the 1995 taxable year. Petitioner did not report the 1995 payments from MetLife and did not attach the Form W-2 he received from MetLife to his 1995 return.

In the notice of deficiency, respondent determined that petitioner failed to report $72 of taxable wages from General Motors in 1995, and further determined that petitioner should have included $9,633, the entire amount of MetLife's 1995 payments to petitioner, in gross income under section 105(a) for the 1995 taxable year.

Gross income does not include amounts received through accident or health insurance for personal injuries or sickness to the extent such amounts are: (1) Attributable to contributions by the employer which were includable in the gross income of the employee, or (2) paid for by the employee. See sec. 104(a)(3).

Section 105(a) provides, however, that amounts received by an employee through accident or health insurance are includable

in the gross income of the employee to the extent such amounts are: (1) Attributable to contributions by the employer which were not includable in the gross income of the employee, or (2) paid by the employer.

Petitioner concedes that the disability insurance premiums were paid by General Motors and that he did not include those premiums in his gross income but contends that the 1995 payments from MetLife were disability payments pursuant to section 105(c), and, therefore, excludable from gross income.

Section 105(c) provides as follows:

> SEC. 105(c). Payments Unrelated to Absence From Work.--
>
> Gross income does not include amounts referred to in subsection (a) to the extent such amounts--
>
> > (1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer * * *, and
> >
> > (2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work.

In order to qualify for the section 105(c) exception, the payments to petitioner must satisfy both paragraphs (1) and (2) of section 105(c). Section 105(c)(2) itself has two parts that must be satisfied: (1) The payments to the taxpayer must be computed with reference to the nature of the injury, and (2) the payments must be computed without regard to the period the

taxpayer is absent from work.  With respect to the first part of section 105(c)(2), <u>Rosen v. United States</u>, 829 F.2d 506, 509 (4th Cir. 1987), states as follows:

> A review of the cases indicates that for payments to be excludible from income under section 105(c), the instrument or agreement under which the amounts are paid must itself provide specificity as to the permanent loss or injury suffered and the corresponding amount of payments to be provided. * * * exclusion is permitted only under plans which vary benefits to reflect the particular loss of bodily function. * * *

Petitioner has been unable to establish that the disability plan payments he received from MetLife comport with the requirements of section 105(c).  Indeed, petitioner concedes that the monthly payments from MetLife are computed based on the number of years of credited service petitioner had at General Motors and not with regard to any injury as required by section 105(c)(2).

On the basis of the record, we find that the disability plan payments petitioner received from MetLife are not excludable from gross income pursuant to section 105(c).  Since we find that on the basis of the record the disability payments fail to satisfy section 105(c)(2), we need not decide whether they satisfy section 105(c)(1).

In the alternative, petitioner contends that even if we find that the disability payments are not excludable from gross income pursuant to section 105(c), the disability plan payments are part

of a wage continuation plan and are therefore nontaxable pursuant to section 105(d).

Pursuant to section 105(d), during years for which it was in effect, payments made under wage continuation plans could be excluded from gross income under certain conditions. Section 105(d), however, was repealed, effective for taxable years after 1983 by the Social Security Act Amendments of 1983, Pub. L. 98-21, sec. 122(b), 97 Stat. 85.

Finally, petitioner contends that the IRS refunded his taxes for prior years after he filed an amended return in 1987 and that by such action the IRS implicitly recognized that the MetLife payments were nontaxable. We do not agree. Petitioner has failed to establish the reason for refunds he received in prior years. However, it is well established that even if petitioner had presented proof that respondent may have overlooked or accepted the tax treatment of certain items in previous years, respondent is not precluded from correcting that error in subsequent years with respect to the same taxpayer. See Rose v. Commissioner, 55 T.C. 28, 32 (1970).

At the conclusion of the trial, the Court instructed respondent to contact MetLife in order to get an accurate accounting of disability benefits paid to petitioner during the 1995 taxable year. In an apparent answer to respondent's query, MetLife sent petitioner a Form W-2c, Statement of Corrected

Income and Tax Amounts, for the 1995 taxable year, which reported that petitioner had received only $8,257.08 in disability payments and not $9,633.26 as stated on the previously issued 1995 Form W-2.  Accordingly, we find that petitioner received $8,257.08 from MetLife and hold that such amount is taxable income pursuant to section 105(a).

To reflect the foregoing,

Decision will be entered
under Rule 155.