T.C. Memo. 1997-230

UNITED STATES TAX COURT

THOMAS J. RABIDEAU AND SANDRA M. RABIDEAU, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19249-95.                    Filed May 15, 1997.

Thomas J. and Sandra M. Rabideau, pro sese.

<u>George W. Bezold</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the taxable year in
issue, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1992, as well as an accuracy-related penalty for negligence under section 6662(a), in the amounts of $6,176 and $1,235, respectively.

Respondent subsequently conceded that petitioners are not liable for the accuracy-related penalty. Accordingly, the sole issue for decision is whether petitioners may exclude from gross income the disability benefits that petitioner Thomas J. Rabideau received from his former employer.[2]

### FINDINGS OF FACT

Some of the facts have been stipulated, and they are so found. Petitioners resided in Pardeeville, Wisconsin, at the time that their petition was filed with the Court.

Petitioner Thomas J. Rabideau (petitioner) was employed by Metropolitan Life Insurance Co. (Met Life) from no later than 1981 through 1989.

During 1989, Met Life maintained a "flexible benefits plan", or "cafeteria plan", that allowed eligible employees to select between different types of benefits and cash. Specifically, the flexible benefits plan offered medical, dental, long-term disability, and life insurance benefits to eligible employees of Met Life.

---

[2] An adjustment to petitioners' earned income credit is a mechanical matter, the resolution of which depends on our disposition of the issue for decision.

Met Life maintains a "Met Life Options Decision Book" (the Met Life manual) that explains an employee's options under the flexible benefits plan. The Met Life manual provides in pertinent part as follows:

> The Company currently spends money to pay for your benefits. * * * The contribution you receive will pay for most of the cost of coverage for you and for your dependents. The cost you pay, if any, will depend on the options you select under the Met Life Options program.
>
>      *    *    *    *    *    *    *
>
> If you select lower levels of coverage * * * the cost may be less than the Company's contribution for you. Then you will receive extra dollars in your pay throughout the year. Of course, you will have to pay taxes on these extra dollars.
>
> If you select higher levels of coverage * * * the cost may be more than the Company's contribution for you. Then you will pay the difference. But you pay this remaining cost with before-tax dollars, so you reduce your taxes.

The amount of the "Company's contribution" (the Met Life contribution) is not a static figure, but is based instead on the number of dependents for whom an employee selects medical and dental coverage.[3] Thus, the Met Life contribution is greater for employees who select medical and dental coverage for themselves and their dependents than it is for employees who select such coverage for themselves but not their dependents. Similarly, the

---

[3] The Met Life contribution also includes an amount for life insurance and long-term disability benefits, which amount is independent of the number of an employee's dependents.

Met Life contribution is greater for employees who select medical and dental coverage for themselves but not their dependents than it is for employees who do not select any medical and dental coverage. Specifically, employees who select medical and dental coverage for themselves and two or more dependents receive a Met Life contribution in the amount of $4,811, whereas employees who select medical and dental coverage for themselves but not their dependents receive a Met Life contribution in the amount of $1,990. Employees electing not to receive any medical or dental benefits receive a Met Life contribution in the amount of $881.

The cost of employee benefits is determined by the type and level of coverage selected and, in the case of medical and dental benefits, also by the number of covered dependents. For employees selecting lower levels of coverage (e.g., less life insurance or higher deductibles), the cost is less than for similarly situated employees selecting higher levels of coverage (e.g., more life insurance or lower deductibles).

Although employees are not required to select either medical or dental coverage, employees are required to select long-term disability coverage and life insurance coverage. However, employees may choose among several options for each type of required coverage. In the case of long-term disability, the options involve coverage based on different replacement-of-salary percentages, which range from 50 percent of salary to 60 percent

of salary.[4]  In the case of life insurance, the options involve coverage based on different multiples of salary, which range from 1 times salary to 4 times salary.

According to the Met Life manual, if the cost of the selected benefits is less than the Met Life contribution, then the excess of the Met Life contribution over the cost of the selected benefits is distributed to the employee as cash in his or her wages.  On the other hand, if the cost of the selected benefits is greater than the Met Life contribution, then the excess of the cost of the selected benefits over the amount of the Met Life contribution is deducted from the employee's wages on a pre-tax basis.

On November 10, 1988, petitioner completed an enrollment form for participation in Met Life's flexible benefits plan for 1989.  On that form, petitioner selected the following "before-tax" benefits:  (1) Medical benefits for himself and his dependents; (2) dental benefits for himself and his dependents; (3) long-term disability benefits at 60 percent of salary; and (4) life insurance benefits at 4 times salary.  The cost for each of these benefits was $4,448, $495, $502, and $288, respectively, for a total cost of $5,733.  The applicable Met Life contribution applied against the total cost was $4,811.  The difference

---

[4] The amount of disability benefits is also related to the number of years of service that an employee accrues prior to the date of his or her disability.

between the total cost of coverage selected by petitioner and the amount of the Met Life contribution, i.e., $5,733 less $4,811 or $922, was deducted from petitioner's wages on a pre-tax basis.

In August 1989, petitioner was injured and filed a claim for disability benefits. For 1992, the taxable year in issue, petitioner received disability benefits from Met Life in the amount of $35,520.60. The amount of such benefits was based on the applicable percentage of petitioner's salary and his years of service prior to the date of his disability.

Met Life issued petitioner a Form W-2 (Wage and Tax Statement) for 1992. On such form, Met Life characterized the disability benefits that were paid to petitioner as compensation.

On their 1992 Federal income tax return, petitioners did not report as income the disability benefits that petitioner received from Met Life. In the notice of deficiency, respondent determined that such benefits constituted taxable income. Respondent also determined that petitioners were liable for an accuracy-related penalty for negligence under section 6662(a).[5]

### OPINION

As a general rule, section 104(a)(3) excludes from an employee's gross income amounts received through accident or health insurance for personal injuries or sickness. However, the section provides an exception for amounts received by an employee

---

[5] As previously stated, respondent subsequently conceded the accuracy-related penalty.

to the extent such amounts are either paid by the employer or are attributable to employer contributions that were not includable in the employee's gross income.[6]

Section 105(a) coordinates with section 104.  As a general rule, section 105(a) provides that amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts are either paid by the employer or are attributable to contributions by the employer that were not included in the employee's gross income.

Section 105(c) sets forth an exception to the general rule of subsection (a).  Thus, section 105(c) provides in relevant part as follows:

> (c) Payments Unrelated to Absence From Work.--
> Gross income does not include amounts referred to in
> subsection (a) to the extent such amounts--
>
>> (1) constitute payment for the permanent loss
>> or use of a member or function of the body * * *,
>> and
>
>> (2) are computed with reference to the nature
>> of the injury without regard to the period the
>> employee is absent from work.

---

[6] See Trappey v. Commissioner, 34 T.C. 407 (1960) (disability income is received through accident or health insurance for personal injuries or sickness within the meaning of sec. 104(a)(3)); see also sec. 105(e)(1) (for purposes of secs. 104 and 105, amounts received under an accident or health plan for employees are treated as amounts received through accident or health insurance).

Finally, section 106 works in conjunction with section 104(a)(3) and section 105(a). Section 106 excludes from an employee's gross income the cost of employer-provided coverage under an accident or health plan. Thus, if employer contributions are not included in the employee's gross income under section 106, the benefits attributable to such contributions are governed by the inclusionary rule of section 105(a), rather than by the exclusionary rule of section 104(a)(3).

Petitioners contend that the disability payments received by petitioner are attributable to contributions made by petitioner and, thus, are excluded from petitioners' gross income under section 104(a)(3). Specifically, petitioners argue that the money used to pay the premiums for petitioner's long-term disability policy would have been received by petitioner in his weekly paycheck if he had selected cash in lieu of benefits. From this, petitioners conclude that petitioner's disability benefits are attributable to contributions made by petitioner, rather than by Met Life. Alternatively, petitioners argue that petitioner's disability payments are excludable from gross income under section 105(c).

Respondent contends that petitioners must include petitioner's disability benefits in gross income under section 105(a) because such benefits are attributable to contributions

made by Met Life that were not includable in petitioners' gross income.

We begin by addressing petitioners' primary contention that the contributions for petitioner's disability benefits were paid with funds that petitioner could have received if he had elected to receive cash in lieu of benefits.

Petitioners' contention is not supported by the record. Here we recall that Met Life employees were required to select long-term disability coverage (as well as life insurance coverage). Petitioner did not have the option, therefore, of forgoing long-term disability coverage and receiving instead cash in an amount equivalent to the cost of such coverage. In other words, petitioner could not have increased his take home pay by forgoing long-term disability coverage (or by forgoing life insurance coverage).

We further recall that the cost of the coverage for long-term disability and life insurance, which coverage petitioner was required to select, was less than the Met Life contribution of $881 that was allocable to petitioner if he did not select any medical and dental coverage. In other words, the cost of the required coverage, given the options as selected by petitioner, was $790 (i.e., $502 for long-term disability and $288 for life insurance), and this amount was $91 less than the aforementioned Met Life contribution of $881. Thus, Met Life effectively paid

in full the cost of petitioner's long-term disability coverage. Pursuant to section 105(a), the long-term disability benefits received by petitioner pursuant to such coverage would therefore be includable in petitioners' gross income.

Petitioners seek to avoid the foregoing conclusion by focusing on the fact that petitioner selected benefits for which the total cost ($5,733) exceeded the Met Life contribution ($4,811). Because such excess (i.e., $922) was deducted from petitioner's wages, and because such excess exceeded the cost of petitioner's long-term disability coverage, petitioners argue that petitioner's long-term disability benefits should be excluded from gross income.

Petitioners' argument overlooks the fact that the cost of petitioner's benefits exceeded the Met Life contribution only because petitioner selected medical and dental coverage for himself and his dependents. In other words, the excess of the total cost of benefits over the Met Life contribution is allocable to the cost of medical and dental coverage and not to the cost of long-term disability coverage. Indeed, as previously stated, the combined cost of long-term disability coverage and insurance coverage was $91 less than the Met Life contribution if petitioner had forgone medical and dental coverage.

In summary, after careful consideration, we conclude that the cost of petitioner's long-term disability coverage was

attributable to petitioner's employer, Met Life, and that, as a consequence, section 104(a)(3) does not serve to exclude petitioner's long-term disability benefits from petitioners' gross income.

Having so concluded, we turn to petitioners' contention regarding the exclusion of petitioner's disability benefits under section 105(c).

For disability benefits to qualify for exclusion under section 105(c), the payments must be computed with reference to the nature of the injury. This requirement is met only if the plan varies the benefits according to the type and severity of the taxpayer's injury. Rosen v. United States, 829 F.2d 506, 510 (4th Cir. 1987); Beisler v. Commissioner, 814 F.2d 1304, 1307-1308 (9th Cir. 1987), affg. en banc T.C. Memo. 1985-25; Hines v. Commissioner, 72 T.C. 715, 720 (1979).

In the instant case, the disability benefits received by petitioner were not based on the type and severity of the injury suffered. Rather, the amount of the benefits that petitioner received was determined by the amount of his salary and his years of service prior to his disability. Thus, because petitioner's disability coverage did not compute the amount of the benefits with reference to the nature of the injury as required by section 105(c)(2), petitioner's disability benefits are not excludable from gross income under such section.

We have carefully considered petitioners' remaining arguments and find them unavailing.[7]

In conclusion, because the entire cost of petitioner's disability benefits was attributable to petitioner's employer, Met Life, and because such benefits were not computed with reference to the nature of petitioner's disability, such benefits must be included in petitioners' gross income pursuant to section 105(a).

To reflect our disposition of the disputed issue, as well as respondent's concession,

<u>Decision will be entered for respondent as to the deficiency in income tax and for petitioners as to the accuracy-related penalty</u>.

---

[7] Petitioners rely, in part, on the following statement in IRS Publication 525 at 9 (Taxable and Nontaxable Income): "If you pay the entire cost of a health or accident insurance plan, do not include any amounts you receive for your disability as income on your tax return."  In view of our holding that Met Life paid, or is deemed to have paid, the cost of petitioner's long-term disability coverage, the foregoing statement is inapposite.  Even if this were not the case, we note that informal IRS publications are not authoritative sources of Federal tax law; rather, applicable statutes, regulations, and judicial decisions constitute the authoritative sources of law that inform our decisions.  E.g., <u>Zimmerman v. Commissioner</u>, 71 T.C. 367, 371 (1978), affd. without published opinion 614 F.2d 1294 (2d. Cir. 1979); <u>Green v. Commissioner</u>, 59 T.C. 456, 458 (1972).