T.C. Summary Opinion 2006-136


UNITED STATES TAX COURT


LARRY J. AND CATHERINE E. FRANCE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3243-03S.            Filed August 30, 2006.


Larry J. France, pro se.

<u>Bradley C. Plovan</u>, for respondent.


POWELL, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]    Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $1,226 and an accuracy-related penalty under section 6662(a) of $245 in petitioners' 2000 Federal income tax.

After a concession by respondent,[2] the issues are (1) whether petitioners[3] are entitled to exclude from gross income payments made by the County of Baltimore, Maryland, pursuant to provisions of the Employees' Retirement System of Baltimore County (ERS), (2) whether petitioners overstated Catherine E. France's wages by $737 on their 2000 Federal income tax return, and (3) whether we have jurisdiction over a deficiency in petitioners' 1997 income tax.[4]

The findings of fact and conclusions relevant to each issue are summarized below. Petitioners resided in Finksburg, Maryland, at the time their petition was filed.

---

[2]    Respondent concedes that petitioners are not liable for the accuracy-related penalty under sec. 6662(a) for taxable year 2000.

[3]    Petitioner Catherine E. France did not appear at the trial and did not execute the stipulation of facts. With respect to her, we will dismiss this case for failure to prosecute. See Rule 123(b). The decision, when entered, will be in the same amount as ultimately determined against petitioner Larry J. France. In the opinion, references to petitioner are to Larry J. France.

[4]    Respondent also made a computational adjustment to petitioners' taxable Social Security income for taxable year 2000 based on the proposed increase to petitioners' taxable income. Resolution of this issue will depend on our decision regarding petitioners' gross income for taxable year 2000.

Issue 1.  ERS Payments

A.  Background

Petitioner was born in 1946.  Petitioner worked for the County of Baltimore, Maryland, from July 11, 1981, until June 28, 1996.

During his tenure with Baltimore County, petitioner was a member of the ERS of Baltimore County, a defined benefit plan established under the Baltimore County Code[5] to provide retirement benefits to employees in the service of Baltimore County.  Pursuant to the ERS provisions of the Baltimore County Code, petitioner was required to contribute a percentage of his salary to the ERS through automatic payroll deductions.  Petitioner's contributions were made on an after-tax basis prior to October 1, 1989, and on a pre-tax basis thereafter.  Baltimore County Code sec. 23-91(g) (1988).  Pursuant to Baltimore County Code section 23-91(g) (1988), the pre-tax employee contributions petitioner made after October 1, 1989, were "pick up" contributions made by Baltimore County in accordance with section 414(h)(2).  As such, the pick up contributions were

---

[5] Baltimore County Code sec. 23-1 et seq. (1988).  The ERS provisions of the Baltimore County Code were recodified in 2003.

treated as employer contributions and were not included in petitioner's gross income.[6]

Over the course of his employment, petitioner held several positions with Baltimore County, the last of which was assistant supervisor of the Animal Control Division. On November 29, 1993, while performing his duties in this position, petitioner was involved in an automobile collision. Petitioner injured his left wrist in this collision.[7]

In early 1994, petitioner underwent surgery and physical therapy to treat his injured wrist. Petitioner returned to his post as assistant supervisor with the Animal Control Division in April 1994. Petitioner's job performance was not affected by the injury to his left wrist because he is right-handed.

After petitioner's return to work, petitioner's supervisor did not allow petitioner to resume performing the duties he had performed as assistant supervisor prior to taking time off to treat his injured wrist. Petitioner's supervisor did not allow

---

[6] In accordance with sec. 414(h)(2), the ERS provides that the pick-up contributions are not included as gross income of a member until the pick-up amounts are distributed or made available to the member. Baltimore County Code sec. 23-91(g) (1988).

[7] For certain of the facts summarized in this opinion, we rely on the opinion and order in In the Matter of Larry France, Case No. CBA-96-176 (Sept. 10, 1997), issued by the County Board of Appeals of Baltimore County in response to petitioner's application for disability retirement benefits under the provisions of the ERS.

him to perform his duties for "personal reasons" and not because of the injury to petitioner's wrist.

Petitioner became increasingly upset as a result of the treatment he believed he was receiving from his supervisor. In October 1994, petitioner began receiving psychological counseling from mental health professionals. Petitioner was placed on medication and ultimately diagnosed with depression and an anxiety disorder.

Petitioner's difficulties with his supervisor continued until January 1996. At that time, petitioner's mental health had deteriorated to the point that his physician recommended he stop working at the Animal Control Division. In accordance with this recommendation, petitioner left the Animal Control Division on sick leave beginning February 6, 1996.

In June 1996, while still on sick leave, petitioner was notified by the County that his position would be terminated by June 30, 1996, due to budget constraints. On June 26, 1996, petitioner applied for disability retirement benefits pursuant to the provisions of the ERS. Petitioner was 50 years old at the time he applied for disability retirement benefits. Petitioner's employment with the County ended on June 28, 1996.

Under the ERS, service retirement benefits are available for members who attain specified age and service requirements. Members are generally eligible for normal service retirement

after the attainment of age 60 or after 30 years of service with Baltimore County.  Baltimore County Code sec. 23-48 (1988).

In addition to service retirement, the ERS provides for two kinds of retirement benefits incident to disability:  Ordinary and accidental.  Ordinary disability retirement benefits are available

> Upon the application of a member in service or of the employer * * * who has had five (5) or more years of creditable service * * * provided that the Medical Board, after a medical examination of such member, shall certify that such member is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that such member should be retired.

Baltimore County Code sec. 23-53 (1988).  Accidental disability retirement benefits are available to a member "who has been totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, without willful negligence on the member's part".  Baltimore County Code sec. 23-55 (1988).

In November 1996, the board of trustees of the ERS denied petitioner's application for disability retirement benefits because it was unable to certify that petitioner was mentally or physically incapacitated.  Petitioner appealed the decision to the County Board of Appeals of Baltimore County (Board of Appeals).

On appeal, the Board of Appeals considered whether petitioner had established that he was permanently incapacitated for the further performance of his duties and therefore entitled to either an ordinary disability retirement benefit under Baltimore County Code section 23-53 (1988), or an accidental disability retirement benefit under Baltimore County Code section 23-55 (1988).  In an opinion and order dated September 10, 1997, the Board of Appeals found the following:

> Regarding the issue of whether the mental health problems experienced by * * * [Mr. France] arose as the natural and proximate result of the automobile accident suffered by Mr. France on November 29, 1993, the Board concludes that * * * [Mr. France] has not satisfied his burden in this instance.  Only the physical injury to the left wrist was the direct result of that accident, and we look to * * * [the] assessment that Mr. France's wrist is 30 percent impaired and to a general agreement among witnesses on both sides that Mr. France's ability to do the job as Assistant Supervisor of Animal Control would not be negated by this impairment.
>
> However, the Board does find that the mental health disorders of depression and anxiety that Mr. France developed in the workplace following the accident have rendered Mr. France incapable of performing the job for which he was hired.  We are persuaded by the clear and definitive statements of accepted experts in the mental health field * * * that Mr. France is mentally incapacitated and that incapacitation is likely to be permanent.  The Board notes that Mr. France's exemplary performance record for 16 years of employment with Baltimore County is at odds with the anxious, uncertain demeanor of the man who testified of his hopelessness and fears for his future.
>
> We are satisfied that the accident itself did not cause the mental health problems complained of, and, therefore, while accidental disability benefits are denied, <u>the Board finds Mr. France deserving of</u>

> ordinary disability retirement benefits, and will so
> order. [In the Matter of Larry France, Case No.
> CBA-96-176 (Sept. 10, 1997); emphasis added.]

Consistent with these findings, the Board of Appeals denied petitioner's application for "accidental disability retirement," but reversed the decision of the ERS board of trustees and granted petitioner "ordinary disability benefit[s]."

For taxable year 2000, petitioners received annuity and pension income[8] from the ERS totaling $15,274, of which the ERS reported $15,019 as taxable income.[9]  Petitioners did not report this income on their timely filed 2000 Form 1040, U.S. Individual Income Tax Return.  Respondent determined that $15,019 of the annuity and pension income from the ERS should have been included in petitioners' 2000 gross income.

---

[8]     Pursuant to Baltimore County Code sec. 23-54 (1988), petitioner's ordinary disability retirement allowance consists of both an annuity and a pension.  The annuity is the actuarial equivalent of petitioner's accumulated contributions to the ERS at the time of retirement, and the pension is based on a formula involving petitioner's "average final compensation".

[9]     The $255 difference between the amount petitioners received from the ERS and the amount reported as taxable represents a return of petitioner's after-tax contributions to the ERS.

B.  <u>Discussion</u>[10]

1.  <u>Gross income</u>

Section 61 provides that "gross income means all income from whatever source derived".  Gross income is an inclusive term with broad scope, designed by Congress to "exert * * * 'the full measure of its taxing power.'"  <u>Commissioner v. Glenshaw Glass Co.</u>, 348 U.S. 426, 429 (1955) (quoting <u>Helvering v. Clifford</u>, 309 U.S. 331, 334 (1940)).  Annuities and pensions are enumerated among the items of income included under section 61.  Sec. 61(a)(9), (11).

Statutory exclusions from income are matters of legislative grace and are narrowly construed.  <u>Commissioner v. Schleier</u>, 515 U.S. 323, 328 (1995); <u>Mostowy v. United States</u>, 966 F.2d 668, 671 (Fed. Cir. 1992).  Further, "exemptions from taxation are not to be implied; they must be unambiguously proved."  <u>United States v. Wells Fargo Bank</u>, 485 U.S. 351, 354 (1988).  Taxpayers seeking an exclusion from income must demonstrate they are eligible for the exclusion and bring themselves "within the clear scope of the exclusion."  <u>Dobra v. Commissioner</u>, 111 T.C. 339, 349 n.16 (1998).

Petitioner's primary argument is that the ERS payments are excludable from gross income because they are "disability"

----

[10]    Because the Court decides the issues in this case without regard to the burden of proof, sec. 7491 is inapplicable.

benefits awarded by the Board of Appeals for injuries sustained by petitioner in the workplace, rather than "retirement" benefits. To support this, petitioner points to the language of the Board of Appeals' order, which awarded petitioner "ordinary disability" benefits rather than "ordinary disability retirement" benefits. Petitioner asserts that the Board of Appeals' order of "ordinary disability" benefits reflects the fact that petitioner did not "retire" but was "terminated" from his job with Baltimore County, and that petitioner, who was 50 years old at the time he left his job, was ineligible for "retirement" under the ERS.

It is clear on the record before us that petitioner applied for, and received, disability retirement benefits pursuant to the ERS. The ERS includes provisions that allow for retirement and the receipt of retirement benefits due to mental or physical impairment, in addition to retirement based on age or years of service. The Board of Appeals' opinion found that petitioner was permanently incapacitated for the further performance of his duties and "deserving of ordinary disability retirement benefits", as delineated under the ERS in Baltimore County Code section 23-53 (1988). The Board of Appeals' order reflects this finding, despite omission of the word "retirement".

The taxation of disability retirement benefits, such as those paid to petitioner under the ERS, requires examination of sections 72, 104, and 105, and the regulations thereunder.

Distributions from qualified plans such as the ERS are generally treated as annuities and subject to tax to the extent provided in section 72. Sec. 402(a). Section 72(a) generally requires any amount received as an annuity to be included in gross income. Section 72(b) allows an exclusion by permitting the use of an exclusion ratio to except from gross income amounts proportionate to the taxpayer's investment in the contract. Section 72(c), as relevant here, defines the investment in the contract to be the aggregate amount of premiums or other consideration paid for the contract (or in the instant case, petitioner's after-tax basis).

As a general rule, section 72 does not apply to any amount received as an accident or health benefit. Sec. 1.72-15(b), Income Tax Regs. Amounts received as a result of a disability are accident or health benefits within the meaning of section 1.72-15, Income Tax Regs. Accident or health benefits may be excluded from gross income if such income satisfies specific requirements set forth in either section 104 or 105. Section 104(a), in relevant part, excludes from gross income certain amounts received as compensation for injuries or sickness described in paragraphs (1) through (3) of that section.[11] Section 105(a) includes in gross income certain amounts received

---

[11] Par. (4) of sec. 104(a), which applies to taxpayers who have served in the armed forces or certain other organizations, and par. (5), which applies to victims of terrorist attacks, are, on their face, inapplicable to the facts before us.

under accident and health plans for personal injuries or sickness.

2. Section 104(a)(1)

Section 104(a)(1) excludes from gross income "amounts received under workmen's compensation acts as compensation for personal injuries or sickness". The regulations provide that section 104(a)(1) includes "a statute in the nature of a workmen's compensation act which provides compensation to employees for personal injuries or sickness incurred in the course of employment." Sec. 1.104-1(b), Income Tax Regs. A statute that conditions eligibility for benefits on the existence of a work-related injury or sickness may qualify as a workers' compensation act for purposes of section 104 even though those benefits are called "disability retirement benefits." Take v. Commissioner, 804 F.2d 553, 557 (9th Cir. 1986), affg. 82 T.C. 630 (1984). However, section 104(a)(1) "does not apply to a retirement pension or annuity to the extent that it is determined by reference to the employee's age or length of service * * * even though the employee's retirement is occasioned by an occupational injury or sickness." Sec. 1.104-1(b), Income Tax Regs. The relevant inquiry is into the nature of the statute pursuant to which the payment is made and not the source of the particular taxpayer's injury. Rutter v. Commissioner, 760 F.2d 466, 468 (2d Cir. 1985), affg. T.C. Memo. 1984-525. If the

statute does not qualify, the fact that the taxpayer's injury was in fact work related is irrelevant.  Id.

The ordinary disability retirement benefit awarded to petitioner by the Board of Appeals under Baltimore County Code section 23-53 (1988), does not restrict disability payments to cases of work-related injury or sickness; rather, such retirement benefits are available under that section to any member who has had 5 or more years of creditable service, provided such member meets the other requirements regarding incapacitation.  Ordinary disability retirement benefits under Baltimore County Code section 23-53 (1988), are thus determined by reference to a member's length of service, not by reference to an injury occurring on the job.  See sec. 1.104-1(b), Income Tax Regs. Accordingly, the ordinary disability retirement benefits received by petitioners in taxable year 2000 do not qualify for the exclusion from gross income provided in section 104(a)(1).

### 3.  Section 104(a)(2)

Section 104(a)(2) excludes from gross income "the amount of any damages * * * received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness".  "The term 'damages received (whether by suit or agreement)' means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or

through a settlement agreement entered into in lieu of such prosecution." Sec. 1.104-1(c), Income Tax Regs. Thus, the exclusion must derive from some sort of tort claim against the payor. Rickel v. Commissioner, 900 F.2d 655, 658 (3d Cir. 1990), affg. in part and revg. in part on other grounds 92 T.C. 510 (1989).

The ERS provisions of the Baltimore County Code provide for a "general system of pensions and retirements for the benefit and advantage of its officers, agents, servants, and employees" of Baltimore County. Baltimore County Code sec. 23-1 (1988). Thus, the ordinary disability retirement benefits provided under the ERS are not payments derived from some sort of tort claim against Baltimore County. See, e.g., Flaherty v. Commissioner, T.C. Memo. 1987-61 (Internal Revenue Service employee's disability retirement annuity payments received under the Civil Service Retirement System were not excludable under section 104(a)(2) because the payments were intended to provide for the physical and mental well-being of the employee and were not damages from the settlement or prosecution of a legal suit). Accordingly, section 104(a)(2) does not apply to exclude from gross income the ordinary disability retirement benefits received by petitioners in taxable year 2000.

####    4.    Sections 104(a)(3) and 105

Section 104(a)(3) generally excludes from gross income amounts received by an employee through employer-provided accident or health insurance for personal injuries or sickness, except to the extent such amounts are attributable to employer contributions which were not includable in the gross income of the employee.  Section 105(a) is essentially the mirror image of section 104(a)(3), and, subject to two exceptions, includes in gross income of an employee those amounts not excluded under section 104(a)(3).

In the instant case, petitioner contributed a percentage of his salary to the ERS on an after-tax basis prior to October 1, 1989, and on a pre-tax basis thereafter.  The ERS calculated the nontaxable portion of petitioner's taxable year 2000 ordinary disability retirement benefits attributable to his after-tax contributions to be $255, and respondent has allowed petitioners to exclude this amount from gross income.  The remaining portion of petitioner's ordinary disability retirement benefits is attributable to contributions by Baltimore County that were not included in petitioner's gross income, and to "pick up" contributions under section 414(h)(2) made by Baltimore County that were treated as employer contributions and not included in petitioner's gross income.  Accordingly, petitioners are not entitled to exclude under section 104(a)(3) the remaining portion

of the ordinary disability retirement benefits received from the ERS in taxable year 2000.[12]

Section 105 provides two exceptions to includability even for amounts attributable to employer contributions or payments that were not includable in an employee's gross income. Section 105(b) provides an exclusion for amounts paid by an employer to the taxpayer to reimburse the taxpayer for expenses for medical care. Medical expense reimbursements are not at issue in this case, so the exception in section 105(b) does not apply. Section 105(c) excludes from gross income amounts attributable to

_____

[12] Respondent argues that petitioner's ordinary disability retirement benefits are not excludable under sec. 104(a)(3) because there is no evidence that the source of the benefits was accident or health insurance or an arrangement having the effect of accident or health insurance. We note, in this regard, that for purposes of secs. 104 and 105, amounts received under an accident or health plan for employees, as well as amounts received from a sickness and disability fund for employees maintained under State law, are treated as received through accident or health insurance. Sec. 105(e); secs. 1.104-1(d), 1.105-5(a), Income Tax Regs.; see also Berman v. Commissioner, 925 F.2d 936, 938-939 (6th Cir. 1991), affg. T.C. Memo. 1989-654 (a plan subject to sec. 105 may be encapsulated in a qualified retirement plan); Trappey v. Commissioner, 34 T.C. 407 (1960) (disability retirement income paid under the District of Columbia Teachers' Retirement Act was received through accident or health insurance for personal injuries or sickness within meaning of sec. 104(a)(3)). However, because the remaining portion of petitioner's ordinary disability retirement benefits as determined by respondent would be includable in petitioners' gross income, on the record before us, under either sec. 72 or 105(a), it is not necessary for us to decide whether the ERS would be treated as accident or health insurance, and we limit our decision to a conclusion that, assuming arguendo that the benefits received by petitioner from the ERS were received through health or accident insurance, they are includable in gross income under sec. 105(a).

employer contributions to the extent such amounts (1) constitute "payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement" of the taxpayer, and (2) are computed "with reference to the nature of the injury without regard to the period the employee is absent from work."  Courts have interpreted section 105(c) to exclude payments from gross income only if the plan or contract under which such payments are made varies the amount of the payments according to the type and severity of the injury suffered by the employee.  Rosen v. United States, 829 F.2d 506, 509-510 (4th Cir. 1987); Beisler v. Commissioner, 814 F.2d 1304, 1307 (9th Cir. 1987), affg. en banc T.C. Memo. 1985-25.

Under the ERS, computation of an ordinary disability retirement allowance does not vary with the nature of the injury, as required by section 105(c)(2); instead, all members found to be incapacitated and entitled to ordinary disability retirement benefits receive an allowance in the form of an annuity equivalent to a member's accumulated contributions at the time of retirement, and a pension based on a formula involving a member's "average final compensation".  See Baltimore County Code secs. 23-53, 23-54 (1988).  Accordingly, section 105(c) does not apply to exclude from gross income the ordinary disability retirement benefits received by petitioners in taxable year 2000.

C.    Conclusion

Based on the foregoing, petitioners are not entitled to exclude from gross income the ordinary disability retirement benefits they received from the ERS in taxable year 2000 in excess of the amount determined by respondent.  Accordingly, we hold that the ordinary disability retirement benefits received by petitioners in taxable year 2000, in the amount determined by respondent, constitute gross income.

Issue 2.  Catherine E. France's Wages for Taxable Year 2000

Petitioner Catherine E. France received a Form W-2, Wage and Tax Statement, from Jos. A. Bank Clothiers, Inc., for taxable year 2000 reflecting wages of $4,525.80.  Box 3 of the Form W-2 reflected Social Security wages of $5,262.69.  Petitioners reported the latter amount, $5,262.69, on their 2000 Form 1040. Respondent acknowledges that petitioners overstated the amount of taxable wages received by Catherine E. France from Jos. A. Bank Clothiers, Inc., and the parties stipulate that the correct amount for taxable year 2000 is $4,525.  Based on this, we hold that petitioners' taxable year 2000 wage income is to be reduced in the amount of $737.

Issue 3.  Taxable Year 1997

Respondent issued a notice of deficiency for taxable year 2000 to petitioners on November 25, 2002.  Petitioners submitted a document to the Court on February 24, 2003, which the Court

filed as petitioners' petition.  The document requested a "redetermination of the taxable income in question, to Larry J. France from Baltimore County Employees Retirement System," but did not reference a specific tax year.  The document did reference enclosed "copies of IRS Notice of Deficiency", but the only attachment to the document was the notice of deficiency, dated November 25, 2002, for taxable year 2000.

The document submitted by petitioners did not comply with the rules of the Court as to the form and content of a proper petition, nor was the filing fee paid.  See Rule 173(a).  The Court ordered petitioners to file a proper amended petition and pay the filing fee by May 2, 2003.[13]

Petitioners timely filed an amended petition with the Court and paid the filing fee.  In the amended petition, petitioners disputed deficiencies determined for taxable years 1997 and 2000, and they attached a notice of proposed changes (Form CP-2000), issued by respondent on June 9, 1999, proposing an increase to petitioners' 1997 taxable income.  The income at issue for taxable year 1997 was the same as that at issue for taxable year 2000; specifically, the pension income received by petitioner pursuant to the provisions of the ERS.

---

[13]     The form and style of papers filed with the Court must comply with requirements set forth in Rule 23, and the Court may return any paper that does not conform to the requirements of the Rule.  Rule 23(g).

At trial, respondent stated that a notice of deficiency for taxable year 1997 had been issued to petitioners on November 17, 1999. Petitioner testified that petitioners had paid off the tax liability determined in the notice of deficiency for taxable year 1997, and respondent acknowledged that his records indicated that petitioners' 1997 tax liability had been fully paid after the notice of deficiency was issued to petitioners.

This Court is a court of limited jurisdiction, and we may exercise our jurisdiction only to the extent authorized by Congress. Sec. 7442; Trost v. Commissioner, 95 T.C. 560, 565 (1990). Our jurisdiction to redetermine a deficiency is dependent on the issuance of a valid notice of deficiency and the timely filing of a petition. Secs. 6212, 6213; Rule 13(a), (c). To be timely, a petition must generally be filed within 90 days of the date the notice of deficiency is issued by the Commissioner. If a petition is not filed within the 90-day period, this Court does not acquire jurisdiction of the case. Cataldo v. Commissioner, 60 T.C. 522 (1973), affd. per curiam 499 F.2d 550 (2d Cir. 1974).

In the instant case, the notice of deficiency for taxable year 1997 was issued to petitioners on November 17, 1999, and the petition was filed on February 24, 2003, clearly outside the 90-day period required by section 6213. In addition, the tax deficiency determined by respondent for taxable year 1997 has

been fully paid by petitioners.  Petitioners' attempt to add taxable year 1997 to the instant case by way of their amended petition, although understandable in light of the identity of the issues, does not confer jurisdiction on this Court with respect to that year.  We find that we do not have jurisdiction over petitioners' 1997 taxable year.  The Court, on its own motion, will dismiss and strike taxable year 1997 for lack of jurisdiction.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

An appropriate order will be issued, and decision will be entered under Rule 155.